**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

_____ )
NEW YORK PIZZERIA, INC.                  )
                                         )
                                         )
v.                                       )     Civil Action No. _____
                                         )
                                         )
RAVINDER SYAL and ADRIAN                 )
HEMBREE, Individually; GINA'S            )
LICENSING COMPANY, LLC.; SYAL &          )
SONS, LLC; SUPER DUPER, INC.; GINA'S     )
ITALIAN KITCHEN (DEER PARK);             )
ROLLIN IN THE DOUGH, INC. d/b/a          )
GINA'S ITALIAN KITCHEN (CLEAR            )
LAKE); KINDLING RESTARUANT               )
GROUP, LLC; KINDLING RESTAURANT          )
MANAGEMENT, LLC d/b/a GINA'S             )
ITALIAN KITCHEN (FRIENDSWOOD);           )
and, ROBERT SALCEDO, JOSE GARCIA,        )
JUAN GARCIA; EVIN SANCHEZ; NICOLA        )
NOTARICOLA; POLO SUN; and PHILLIP        )
RASKIN; all Individually.                )
_____ )

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

1.      Plaintiff, New York Pizzeria, Inc. ("NYPI"), files this complaint for

trademark infringement under § 43(a) of the Lanham Act, violation of the Computer Fraud

& Abuse Act (hereinafter, "CFAA"), 18 U.S.C. § 1030(a)(2), and violation of the Stored

Wire and Electronic Communications and Transactional Record Access Act, 18 U.S.C.A.

§ 2701. Plaintiff also brings claims under Texas law pursuant to this Honorable Court's

pendant jurisdiction for misappropriation of trade secrets, unfair competition by

misappropriation, violation of the Texas Theft Liability Act, breach of contract, tortious interference with existing contracts, and civil conspiracy, and seeks a Preliminary Injunction, Permanent Injunction, and Damages, against the named Defendants.

## NATURE OF THE CASE

2.      The lawsuit arises out of a large, well-organized, and unscrupulous scheme to steal NYPI's trade secrets and proprietary interests and use them to establish a competing franchise system. The organizers of the scheme are Defendants Ravinder Syal and Adrian Hembree, and their various business entities, including Defendants Gina's Licensing Company, LLC, Syal & Sons, LLC, and Super Duper, Inc. (collectively, the "Organizers"). Adrian Hembree is a former NYPI vice-president and franchise owner. The Organizers did not develop or possess viable franchise concepts of their own, but obtained NYPI's trade secrets and proprietary information, as wells as NYPI's business methods, through Hembree. The Organizers further obtained the foregoing information by unlawfully acquiring the user name and password of an existing NYPI franchisee, logging in to NYPI's online FranConnect franchisee portal, and downloading NYPI's trade secrets and proprietary information. Several former NYPI employees, Defendants Juan Garcia, Jose Garcia, Evin Sanchez, and Nicola Notaricola (collectively, the "Accomplices") aided and abetted the Organizers in carrying out the scheme. The individual restaurant franchises, Defendants Gina's Italian Kitchen (Deer Park), Kindling Restaurant Group, LLC, Kindling Restaurant Management, LLC, d/b/a Gina's Italian Kitchen (Friendswood), and Rollin in the Dough, Inc., d/b/a Gina's Italian Kitchen (Clear Lake), and their owners, Defendants

1

Polo Sun and Phillip Raskin (collectively, "Gina's Restaurants"), became part of the scheme when they knew, or should have known from disclosures made to them by the Organizers and Accomplices, that Organizers were providing the Gina's Restaurants with NYPI's trade secrets and business methods (hereinafter, "Franchise Defendants").

## THE PARTIES

3.     Plaintiff New York Pizzeria, Inc., is a corporation duly organized and existing under the laws of the State of Texas, and doing business in Harris County.

4.     Defendant Ravinder Syal is an individual residing in Galveston County, Texas, and may be served at 608 Buttonwood Drive, Texas City, Texas 77591.

5.     Defendant Adrian Hembree is an individual residing in Fort Bend County, and may be served at his place of residence, 7310 Maple Run Drive, Sugar Land, Texas 77479, or wherever he may be found.

6.     Defendant Syal & Sons, LLC is a limited liability company duly organized and existing under the laws of the State of Texas, and who may be served through its registered agent, Hamid Far, 2245 Texas Drive, Suite 300, Sugar Land, Fort Bend County, Texas 77479.

7.     Defendant Super Duper, Inc. is a corporation duly organized and existing under the laws of the State of Texas, and may be served through its registered agent, Ravinder Syal, at 608 Buttonwood Drive, Texas City, 77591-3043.

8.     Defendant Gina's Licensing Company, LLC is a limited liability company duly organized and existing under the laws of the State of Texas, and who may be served

2

through its registered agent, Hamid Farooqi, 54 Sugar Creek Center Blvd., Suite 320, Sugar Land, Texas 77478.

9.      Defendant Gina's Italian Kitchen (Deer Park) is a business entity and may be served at its place of business, 3811 Center Street, Deer Park, Texas 77536.

10.     Defendant Kindling Restaurant Group, LLC, is a limited liability company duly organized and existing under the laws of the State of Texas, and who may be served through its registered agent, Polo Sun, 7001 Corporate Drive, Suite 212, Houston, Texas 77036.

11.     Defendant Kindling Restaurant Management, LLC, d/b/a Gina's Italian Kitchen (Friendswood), is a limited liability company duly organized and existing under the laws of the State of Texas, and who may be served through its registered agent, Kindling Restaurant Group, LLC, 7001 Corporate Drive, Suite 212, Houston, Texas 77036.

12.     Defendant Rollin in the Dough, Inc., d/b/a Gina's Italian Kitchen (Clear Lake) is a limited liability company duly organized and existing under the laws of the State of Texas, and who may be served through its registered agent, Next Step Financial Services, 7058 Lakeview Haven Drive, #107, Houston, Texas 77095.

13.     Defendant Robert Salcedo is an individual residing in Fort Bend County, Texas, and may be served at his place of residence, 2435 Planters Row, Sugar Land, Texas 77478, or wherever he may be found.

14.    Defendant Jose Garcia is an individual residing in Harris County, Texas, and may be served at his place of business at 1105 Clear Lake City Blvd., Houston, Texas 77062, or wherever he may be found.

15.    Defendant Juan Garcia is an individual residing in Harris County, Texas, and may be served at his place of business at 1105 Clear Lake City Blvd., Houston, Texas 77062, or wherever he may be found.

16.    Defendant Evin Sanchez is an individual residing in Harris County, Texas, and may be served at his place of business, at 1105 Clear Lake City Blvd., Houston, Texas 77062, or wherever he may be found.

17.    Defendant Nicola Notaricola is an individual residing in Harris County, Texas, and may be served at his place of business, at 1105 Clear Lake City Blvd., Houston, Texas 77062, or wherever he may be found.

18.    Defendant Polo Sun is an individual residing in Harris County, Texas, and may be served at his place of business, 7001 Corporate Drive, Suite 212, Houston, Texas 77036, or wherever he may be found.

19.    Defendant Phillip Raskin is an individual residing in Harris County, Texas, and may be served at his home, 7058 Lakeview Haven Drive, # 108, Houston, Texas 77095, or his place of business, Gina's Italian Kitchen (Clear Lake), 1105 Clear Lake City Blvd, Houston, Texas 77062, or wherever he may be found.

## JURISDICTION AND VENUE

20.    This Honorable Court has jurisdiction over the subject matter of this cause of action under 28 U.S.C. § 1331. The claims herein are based on federal questions arising under the Lanham Act, 15 U.S.C. § 1125, and from violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2) and the Stored Wire and Electronic Communications and Transactional Record Access Act. 18 U.S.C. § 2701. Supplemental jurisdiction over the state law claims is predicated on 28 U.S.C. § 1367. The state law claims are so related to the federal question claims that they form part of the same case or controversy.

21.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) as at least one of the Defendants resides in Galveston County, Texas, and is thus subject to personal jurisdiction in this judicial district.

## ALLEGATIONS OF FACT

22.    NYPI owns and operates successful restaurant franchise systems known as "New York Pizzeria," "Russo's New York Pizzeria," and "Russo's Coal-Fired Italian Kitchen." Thirty-two (32) restaurant units in NYPI's franchise systems operate in five states and in the Middle-East in the United Arab Emirates, and approximately twenty-four (24) restaurant units are currently under development. NYPI is expanding into Hawaii, Oklahoma, Nevada, Illinois, and New York, and internationally into the Middle East in the Kingdom of Saudi Arabia, Qatar, Kuwait, and the Kingdom of Bahrain. Eighteen (18) Russo's New York Pizzeria locations and three (3) Russo's Coal-Fired Italian Kitchen locations operate in the greater Houston-Galveston metropolitan area.

23.     Gerardo Anthony Russo, ("Russo") developed NYPI's recipes and concepts. Russo previously operated several restaurants, including Anthony's Pizzeria, Café Anthony's, Anthony's Trattoria, and Russo's Pizzeria, prior to founding NYPI. Russo is the sole owner, founder, and CEO of NYPI.

### NYPI's Trade Secrets

24.     Anthony Russo developed, through the expenditure of considerable time and money, recipes and "plate specifications" used in the preparation of NYPI's menu items. The recipes and plate specifications are not just a list of generic ingredients and mixing instructions; they are detailed and unique collections of specially sourced ingredients and strict preparation and presentation instructions. Although Russo buys from major wholesalers such as Roma Performance Foods (hereinafter, "Roma"), he spent, and continues to spend, considerable time determining which ingredients of thousands offered by multiple vendors best enhance NYPI's dishes. He uses ingredient brands not commonly used by other pizzerias and Italian restaurants, and successfully lobbied Roma to add several brands and/or products to its distribution network to accommodate NYPI's franchises. For example, NYPI franchises use only one brand of olive oil, obtained from a single producer in Sicily, which Roma added to its distribution network at NYPI's request. Products added to Roma's distribution list were not limited to specific brands of ingredients, but specific brands of supplies as well, such as take-out containers, which Russo believes enhances NYPI's business.

25.     The manner and order of mixing the ingredients, and their preparation, is as important to NYPI as the ingredients themselves. Russo developed mixing and preparation instructions for each of NYPI's dishes. For example, NYPI has developed methods of preserving the color and saltiness of pasta, and maintaining the moisture content of stored pizza dough. These methods are not used by other Italian restaurants and pizzerias. NYPI provides those instructions to its franchisees. Additionally, the manner in which food is placed on dishware and presented to the customer is as important as the recipes and preparation methods. Each of NYPI's dishes are "plated" according to a specific set of criteria before being served to customers. These criteria are published as "plate specifications" and likewise are available only to NYPI owned-restaurants and NYPI franchises. Finally, Anthony Russo and NYPI developed, through the expenditure of considerable time and money, written training manuals and restaurant operations manuals for the cooks, servers, host/hostesses, and cashiers related to restaurant operations, that maximized efficiency and customer service, and were also made available to NYPI owned-restaurants and NYPI's franchisees.

26.     Together, the recipes, recipe books, plate specifications, ingredient brands, and supplier identities, and training and restaurant operations manuals are NYPI's trade secrets (hereinafter, "Trade Secrets), and give NYPI a competitive advantage over competitors who did not know or use the Trade Secrets.

27.     NYPI took steps, and continues to take steps, to protect its Trade Secrets and maintain its Trade Secrets as closely guarded secrets. The Trade Secrets are not disclosed

to anyone but employees of NYPI or NYPI licensed franchises. Each franchise agreement includes a non-disclosure provision. By executing the franchise agreement, the franchisee acknowledges that he or she is receiving Trade Secrets and other confidential information from NYPI, including the recipes, recipe books, plate specifications, ingredients information, supplier identities, and training and restaurant operation manuals, and that the information is NYPI's trade secret. Each franchisee agrees and promises not to use or disclose NYPI's Trade Secrets to the detriment of NYPI, or in derogation of NYPI's rights. Each franchisee is required, and does, obtain a signed non-disclosure agreement from each franchise employee, which contains similar non-disclosure provisions. NYPI's internal auditor visits NYPI stores to ensure compliance, and examines the non-disclosure agreements to ensure the franchisees are having employees execute the agreements. Furthermore, NYPI requires its corporate and corporate-owned restaurant employees to sign non-disclosure agreements. Adrian Hembree, as a vice-president of NYPI, signed a non-disclosure agreement, and as a franchisee, signed a Franchise Agreement.

### NYPI's Turnkey Restaurant Franchise Product

28.     Additionally, Anthony Russo also developed, through the expenditure of considerable time and money, a successful turnkey restaurant franchise product (hereinafter, "Restaurant Franchise Product"). The Restaurant Franchise Product is more than just the sum of NYPI's trade secrets. The Restaurant Franchise Product provides the franchisee with a proven, successful business model that merely requires the investment of capital and labor. The franchisee need only "turn the key" to begin operations.

8

## The Flavor of NYPI's Menu Offerings Are Distinctive

29.     NYPI uses carefully selected and sourced ingredients, which give NYPI's dishes a distinctive taste. Specifically, it is the ingredients and preparation methods used in NYPI's base tomato, marinara, and meat sauces, pizza dough, and cheese selection, which provide the distinctive taste to NYPI's menu offerings. NYPI's distinctive taste is recognized and sought out by consumers, and is identified with NYPI.

## DEFENDANTS' WRONGFUL CONDUCT

## Structure of Syal and Hembree Businesses

30.     Ravinder Syal is involved in numerous business enterprises, including but not limited to three of the defendants in this lawsuit: Syal & Sons, LLC, Super Duper, Inc., and Gina's Licensing Company, LLC (collectively, the "Syal Defendants"). Syal has previously testified that he owns 100% of Syal & Sons, which licenses the Gina's Italian Kitchen restaurants. He has further testified that the franchises pay ten percent (10%) of their profits to Gina's Licensing Company, LLC. Syal has previously testified that he owns 70 percent of Gina's Licensing Company, LLC, and Adrian Hembree owns the other 30 percent. On information and belief, Syal is also the sole owner of Super Duper, Inc., whose corporate charter has been forfeited for failure to pay franchise taxes.

## The Hembree and NYPI Relationship, Litigation

31.     Adrian Hembree, along with his wife (who, coincidentally, is named Gina), and Gina's father, Defendant Robert Salcedo, jointly own Salcedo/Hembree Investments, LLC, which was an NYPI franchisee (hereinafter, "Salcedo/Hembree Franchise"). NYPI

9

terminated Hembree's employment as vice-president in March 2011. In October 2011, NYPI sought to terminate the Salcedo/Hembree Franchise. The parties entered into an agreement whereby NYPI would assume ownership of the franchised restaurant in exchange for payment to Hembree. Hembree refused to honor certain obligations under the agreement, however. Subsequently, NYPI refused to remit payment to Hembree. Hembree, his wife, and Salcedo/Hembree Investments, filed a lawsuit in the 157th District Court in Harris County Texas, Cause No. 2011-73101, *Gina Hembree, Adrian Hembree, and Salcedo/Hembree Investments, LLC v. New York Pizzeria, Inc. and Gerardo Anthony Russo*, against NYPI alleging breach of the agreement (hereinafter, "Hembree/NYPI Lawsuit"). NYPI filed a counterclaim against Hembree, alleging Hembree was the breaching party. In September 2012, NYPI amended its counterclaim to include claims that Hembree misappropriated and disclosed NYPI's trade secrets and confidential information to Ravinder Syal for the creation of the Gina's businesses.

32.     On January 9, 2013, Adrian Hembree, Gina Hembree, Salcedo/Hembree Investments, LLC, and NYPI settled all claims that were brought, or could have been brought by the parties against one another. The Settlement Agreement stated that the parties were releasing all claims, asserted or which could have been asserted. Had Adrian Hembree severed his relationship with the other Organizers, Accomplices, and Gina's Restaurants, he would not be a defendant in this lawsuit. As will be shown, however, before the ink was even dry on the Settlement Agreement, and in complete disregard of the law and Harris County District Court, Hembree continued to actively participate in the conspiracy to steal

10

NYPI's Trade Secrets and Restaurant Franchise Product, and in fact made further disclosure of NYPI's Trade Secrets to Gina's personnel. These new acts were post-settlement, form the basis for new and independent claims, and are not barred by the settlement agreement.

## The Conspiracy

33.    Ravinder Syal, Adrian Hembree, their companies, and their Accomplices conspired to misappropriate NYPI's trade secrets and restaurant franchise product. As vice-president of NYPI, Hembree had access to all of NYPI's confidential, proprietary information, including NYPI's recipes, "plate specifications," supplier and ingredient lists, and training and restaurant operations manuals. Hembree also had access to NYPI's proven Restaurant Franchise Product business model. In January and again in April of 2011 Hembree accessed FranConnect, a confidential and proprietary computer network service used by NYPI to serve its franchisees, and mass downloaded confidential and proprietary information owned by NYPI. The information included NYPI's Trade Secrets and information related to NYPI's Restaurant Franchise Product. It included NYPI's Cook Manual, Server Manual, Host/Hostess Manual, and Cashier's Manual. Hembree provided that information to the Syal Defendants, without privilege to do so.

34.    On September 12, 2012, Ravinder Syal filed a Certificate of Formation for Gina's Licensing Company with the Texas Secretary of State's Business Records Division, establishing Gina's as a limited liability company, and identifying himself as the managing member.

35.     On or about September 2012, the first Gina's Italian Kitchen opened in Humble, at 8650 N. Sam Houston Parkway East, Suite 110. The "franchise" was "owned" by Defendant Juan Garcia. Ravinder Syal falsely testified in the Hembree/NYPI Lawsuit that Garcia came up with all the recipes, menu and ingredients. The Humble location was later sold and is currently not operating.

36.     On or about November 2012, the second Gina's Italian Kitchen "franchise" opened in Clear Lake, at 1105 Clear Lake City Blvd., 77062, and was also "owned" by Defendant Juan Garcia, but the primary operator was yet another former NYPI franchise employee, Defendant Nicola Notaricola. Ravinder Syal falsely testified in the Hembree/NYPI Lawsuit that Notaricola and Juan Garcia together came up with the recipes and ingredient lists for the Clear Lake location, when, in fact, the recipes and ingredients for the Humble and Clear Lake locations were stolen wholesale from NYPI. The Clear Lake location was subsequently sold to Defendant Rollin in the Dough, and continues to operate. On information and belief, Rollin in the Dough is owned by Defendant Phillip Raskin, who himself is actively participating in the management of the business. The business continues to use NYPI's Trade Secrets.

37.     The Syal Defendants also hired former NYPI employees Jose Garcia and Evin Sanchez to further assist them in their scheme to create a franchise system based on proprietary information stolen from NYPI.[1] The pair assisted Syal and his companies by

---

[1] Jose Garcia is Juan Garcia's brother.

training Clear Lake, Friendswood, and later, Deer Park employees to use NYPI Trade Secrets.

38.     On December 16, 2012, on information and belief, the Syal Defendants, or a person acting at their direction, unlawfully used an existing NYPI franchisee's user name and password to log into FranConnect. The Syal Defendants, or someone acting at their direction, used that session to copy NYPI's recipes and other proprietary information. NYPI obtained the I.P. address for the computer used to access FranConnect. The I.P. address belonged to a computer at 1934 W. Gray Street, Suite 300, which was the address of Defendant Super Duper, Inc., a business owned by Defendant Ravinder Syal. Neither Defendant Ravinder Syal,  nor Super Duper, Inc., were authorized to have or use an existing NYPI franchisee's user name and password, nor was any individual acting on their behalf authorized to have or use such an existing user name and password. No employee of Ravinder Syal, Syal & Sons, Gina's Licensing Company, or Super Duper was authorized to have or use an existing NYPI franchisee's user name and password, nor was any individual acting on their behalf authorized to have or use such an existing user name and password.

39.     On or about January 15, 2013, Gina's Licensing Company hired Phillip Rich as CEO. Despite settling his lawsuit with NYPI and Anthony Russo weeks earlier, Adrian Hembree, along with Ravinder Syal, met with Rich, where Hembree handed Rich four of NYPI's proprietary confidential manuals that are part of NYPI's Trade Secrets: NYPI's Cook's Manual, NYPI's Server Manual, NYPI's Host/Hostess Manual, and NYPI's

Cashier's Manual. Hembree told Rich not to tell anyone about the manuals and to keep them a secret. He also told Rich to use the NYPI manuals to improve Gina's manuals.

40.    Hembree also met separately with Rich between January 9, 2013 and January 30, 2013. At that meeting Hembree gave Rich a flash drive containing Gina's recipes. Hembree instructed Rich to not vary the base recipes for pizza sauce, meat sauce, pasta preparation, and marinara sauce. Hembree told him the recipes in the book were "proven" recipes. As will be shown, these recipes are identical to NYPI's.

41.    On or about January 30 2013, the third Gina's franchise opened, Defendant Gina's Italian Kitchen (Friendswood), at 129 Parkwood Ave, Friendswood, Texas 77546. On information and belief this location is currently owned by Kindling Restaurant Management, LLC, which in turn is owned by Polo Sun, who is actively participating in the management of the business. Sun also owns Kindling Restaurant Group, which, on information and belief is a holding company for the establishment of future Gina's franchise locations.

42.    On or about June 2013, a fourth Gina's location opened, Defendant Gina's Italian Kitchen (Deer Park), at 3811 Center Street, Deer Park, Texas 77536. On information and belief that location is currently operated by either Gina's Licensing Company, or Polo Sun.

43.    On information and belief, seven additional Gina's Italian Kitchen franchises will be opening shortly; in Pearland, the Woodlands, Sugar Land, Dallas, and San Antonio, and two in currently undisclosed locations.

44.     On information and belief, Defendant Robert Salcedo indirectly gained access to NYPI's trade secrets. Salcedo gained access to NYPI's trade secrets through Hembree-Salcedo Investments, LLC' confidential relationship with NYPI; Salcedo knew about the existence of that confidential relationship. On information and belief, Salcedo loaned Hembree $150,000.00 to invest in Hembree's previous NYPI franchise. Since the establishment of the Gina's franchise business, Salcedo has been working for the Gina's businesses, providing advertising, marketing, promoting and catering services. On information and belief Salcedo is aware that the Gina's franchises are using and/or disclosing NYPI's trade secrets. On information and belief Salcedo is also aware that Hembree and others stole NYPI's trade secrets and confidential information and provided them to the Gina's business. Finally, on information and belief, Salcedo forgave his loan of $150,000.00 to Adrian Hembree in exchange for a share of the Gina's business.

## NYPI's Investigation And The Extent of the Misappropriation

45.     NYPI's internal auditor (the "Auditor"), along with a private investigator (the "Investigator"), conducted an undercover investigation between May and July 2013. The Auditor obtained a job with the Gina's location in Friendswood. During his work there he observed Defendants and Gina's employees using NYPI's Trade Secrets to prepare and serve food, to train new employees, and to operate the restaurants. He observed and photographed many of the same specially sourced, branded ingredients used by NYPI being used in Gina's kitchens. Moreover, he obtained copies of some of Gina's recipes,

which show a high degree of similarity to NYPI's recipes, including the same specially sourced, branded ingredients, in identical or near identical proportions.

46. As the Auditor's investigation proceeded, the extent of the misappropriation became apparent, and was mind-boggling. The Auditor obtained copies of Gina's order forms for Roma's, and copies of Roma invoices to Gina's. The forms and invoices reveal that Defendants did not just take NYPI's recipes, recipe books, ingredient and supplier lists, and training and restaurant operation manuals, but stole NYPI's whole method of business. Fifty percent of the items Gina's Italian Kitchen purchased from Roma's Performance Foods in September and November 2012, were identical to items ordered by NYPI, right down to the brand of plastic gloves and cleaning solvents used. As late as June, 2013, a significant number of items being ordered by the Friendswood and Clear Lake Gina's Italian Kitchens were identical to those ordered by NYPI, including many of the specially sourced branded ingredients used by NYPI in its base recipes. Furthermore, Gina's Italian Kitchen's menu contained 60 items; 41 of those items were identical to items on NYPI's menu, right down to a descriptive ingredient list. Moreover, Gina's employee's used methods identical to NYPI's methods to prepare and preserve food, and the same specially sourced ingredients used by NYPI. The Gina's locations offered pizzas in the same sizes as NYPI, and used the same brand of pizza boxes as NYPI, and "plated" food the same as NYPI. The Gina's locations used the same brand of takeout containers and plasticware used by NYPI, the same brand of wax paper and foil, the same brand of

trashcan liners, and the same brand of cotton clamp mop heads, cleaning solutions, latex gloves, and paper towels as those used by NYPI. And the list goes on *ad nauseam*.

47.     While the possibility of some branded ingredients being duplicated in recipes exists, the degree of duplication of branded ingredients used by NYPI *and* the Gina's franchises is mind-numbing. Further, three of the brands ordered and used by the Gina's franchises are brands added to Roma's distribution list at NYPI's request. Prior to NYPI's request, Roma did not carry those three brands.[2] More tellingly, while several of NYPI's recipes call for mozzarella cheese, some call for different *brands* of mozzarella cheese. Yet, miraculously, the Gina's franchises *picked the exact same brands* as NYPI for each corresponding recipe!

### Recorded Admissions

48.     The Auditor and Investigator later posed as potential Gina's franchise purchasers, and had several conversations with Gina's personnel, including Defendant Nicola Notaricola. The Auditor taped some of the conversations. In a taped conversation made June 23, 2013, Nicola Notaricola confirmed that the Gina's locations were using NYPI's Trade Secrets. He confirmed that Gina's and NYPI's menu were nearly identical. He further confirmed that the pizza recipes being used by Gina's were 100%-90% NYPI's recipes, and that about 30%-40% of the other recipes were NYPI's.

---

[2] At NYPI's request, Roma's also added a brand of takeout container. It should come as no surprise that container is likewise on Gina's order form.

49.     During the taped conversation, Notaricola also admitted that he lied under oath in the Hembree/NYPI litigation, saying that he developed all of Gina's recipes, when he had not. That prior testimony would also be inconsistent with his statements to the Auditor that the pizza recipes being used at Gina's were 100%-90% NYPI's recipes, and that between 30% and 40% of the other recipes being used at Gina's were NYPI's.

50.     In a separate, untaped, conversation, Notaricola told the Auditor that he (Notaricola) had made some changes to the recipes at the Clear Lake location, but that Syal and the others made him revert to NYPI's recipes. Notaricola also said that he saw the NYPI recipe book being used at Gina's.

51.     The Auditor's investigation confirmed that Adrian Hembree provided the Syal Defendants with NYPI's trade secrets, and that the Syal Defendants, in turn, provided the recipes, recipe book, "plate specifications," the identity of ingredients and suppliers, and NYPI's training and restaurant operations manuals, to all four Gina's Italian Kitchen locations. It confirmed that Defendants Juan Garcia, Jose Garcia, Evin Sanchez, and Nicola Notaricola provided training to employees at those locations, teaching them how to make NYPI's recipes. The investigation further confirmed that the franchise owners Rolling in the Dough, Phillip Raskin, and Kindling Restaurant Group, Kindling Restaurant Management, and Polo Sun were on notice that the recipes being used at their franchise locations came from NYPI and that the Syal Defendants and Adrian Hembree, along with Juan Garcia, Jose Garcia, Evin Sanchez, and Nicola Notaricola, had obtained the trade secrets improperly.

**The Nail In Gina's Coffin**

52.    On September 5, 2013, Phillip Rich, who was Gina Licensing Company's CEO from mid-January 2013 until August 8, 2013, gave a videotaped, sworn statement before a certified court reporter. During that statement Rich gave the court reporter copies of four of NYPI manuals: NYPI's Cook's Manual, NYPI's Server Manual, NYPI's Host/Hostess Manual, and NYPI's Cashier's Manual. Rich testified that these were the four manuals given to him by Adrian Hembree between January 9, 2013, and the opening of the Gina's restaurant in Friendswood on or about January 30, 2013. Rich further identified a copy of Gina's Recipe Book. Rich testified the recipe book was given to him by Adrian Hembree, also between January 9, 2013, and the opening of the Gina's restaurant in Friendswood on or about January 30, 2013. Rich stated that Hembree told him not to say anything to anyone about the manuals. Rich also testified that Hembree is the person who manages all the accounts for the various Gina's restaurants/franchises.

53.    Rich further testified regarding Defendant Notaricola. Rich stated that Ravinder Syal would not let him fire Notaricola, who had been accused of sexual harassment, saying that Gina's was only possible because of what Notaricola had done for them, and that he (Syal) owed Notaricola. When Syal started to elaborate, Rich stated that he cut Syal off, because he did not like where the conversation was going.

54.    During his testimony Rich confirmed that the base recipes—tomato sauce, marinara, meat sauce, and pizza dough—were the recipes and preparation methods shown in the Gina's recipe book, which, as previously alleged, were identical or nearly identical

to NYPI's. Rich confirmed that Hembree told him not to deviate from the base recipes because they were "proven."

### Efforts to Entice NYPI Franchisees Into Becoming Gina's Franchisees

55.    Finally, on information and belief, the Syal Defendants and their accomplices have approached other NYPI franchisees and attempted to convince them to open a Gina's Italian Kitchen, on terms more favorable than those from NYPI. Using the same suppliers, ingredients, recipes, plate specifications, and training manuals, would require minimal effort on the part of both the Syal Defendants and the prospective franchisee. Such a scheme would be a "win-win-lose" situation because the Syal Defendants, not having had to expend the time, effort and money developing a successful franchise business could pass those savings on to the franchisee by offering the franchisee a greater share of the profits. In the "lose" part of the equation is NYPI, who loses franchises and the stream of revenue from those franchises. The scheme is the very essence of "unfair competition."

### Flavor and Trade Dress

56.    The Gina's franchise business copied each and every element of NYPI's recipes for pizza, meat sauce, eggplant parmesan, roasted prosciutto, baked ziti and, on information and belief, numerous other recipes. Those elements include not only specially sourced branded ingredients, but innovative preparation methods, all of which give NYPI's dishes a distinctive flavor that sets NYPI apart from other pizzerias and Italian restaurants. On information and belief, the Gina's franchise business is utilizing the same specially

sourced branded ingredients, the same innovative preparation methods, and the same preservation methods NYPI uses.

57.    "Plating" is a term of art within the restaurant industry that refers to the manner in which a dish is transferred and arranged on a plate and presented to the customer. The Gina's franchise business "plates" many of its dishes in the same manner as NYPI, using NYPI's "plate specifications," copied by Adrian Hembree and others, and disclosed to the Syal Defendants and Franchise Defendants for use in the Gina's franchise business.

58.    The flavor of NYPI's food and its presentation have acquired secondary meaning in the marketplace.

59.    The Gina's franchise business mimics the flavor and the appearance of NYPI's product. Furthermore, the Gina's franchise business's mimicry is likely to cause consumer confusion. Forty-one of the sixty items offered on Gina's menus come from NYPI's menus. All forty-one items are photographed and presented in a manner strikingly similar or identical to NYPI's menu items.

## CLAIMS

## Count 1

**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C)**

60.    Plaintiff hereby adopts and realleges each and every allegation previously set forth in this Petition as if fully set forth herein. The CFAA, 18 U.S.C. § 1030(a)(2)(C), prohibits intentionally accessing a protected computer without authorization and obtaining information from that computer.

61.    FranConnect is a data storage and communications facility, used in or affecting interstate or foreign commerce, operating in conjunction with electronic high speed data processing devices performing logical and storage functions, and is a "protected computer" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(1) and (e)(2)(b).

62.    On December 16, 2011, the Syal Defendants accessed NYPI's FranConnect account using an existing franchisee's user name and password. The Syal Defendants did not have authorization to access NYPI's FranConnect account using an existing franchisee's user name and password. The unauthorized access took place at Super Duper's office on West Gray Street in Houston, Texas. The Syal Defendants, or persons acting under their direction, downloaded or otherwise copied NYPI's proprietary information, including recipes. The unauthorized access resulted in injury to NYPI in that its Trade Secrets were stolen as a result of the unauthorized access, and are now being used by the Syal Defendants, Adrian Hembree, and the Gina's franchises to compete against NYPI.

## Count 2

## Violation of the Stored Wire and Electronic Communications and Transactional Record Access Act, 18 U.S.C. § 2701

63.    Plaintiff hereby adopts and realleges each and every allegation previously set forth in this Petition as if fully set forth herein. It is unlawful for a person to intentionally access, without authorization, a facility through which an electronic communications service is provided, or to intentionally exceed an authorization to access that facility, and thereby obtain a wire or electronic communication while it is in electronic storage in such

system. 18 U.S.C. § 2701(a). Remote computing service means the provision to the public of computer storage and processing services by means of an electronic communications system. 18 U.S.C. § 2711(2).

64.     FranConnect is a facility through which electronic communications services are provided. FranConnect allows franchisors to assist and otherwise provide services to their franchisees through stored communications. NYPI has a FranConnect account, and uses that account to communicate with its franchisees, and to provide them with information regarding its trade secret recipes, recipe books, "plate specifications," ingredients and suppliers, training manuals, and other business materials.

65.     The Syal Defendants obtained an existing franchisee's user name and password to FranConnect. On December 16, 2011, the Syal Defendants accessed NYPI's FranConnect account using that user name and password. The Syal Defendants did not have authorization to access that FranConnect account, or any other FranConnect account associated with NYPI or NYPI franchises. The Syal Defendants, or persons acting under their direction, downloaded or otherwise copied NYPI's proprietary information, including recipes, thereby obtaining an electronic communication while in storage on the system. The unauthorized access took place at Super Duper's office on West Gray Street in Houston, Texas. The unauthorized access resulted in injury to NYPI in that its confidential and proprietary information was stolen as a result of the unauthorized access, and is now being used by the Syal Defendants, Adrian Hembree, and the Gina's franchises to compete against NYPI.

## Count 3

**Trademark and Trade Dress Infringement Under The Lanham Act**

66.     Plaintiff hereby adopts and realleges each and every allegation previously set forth in this Petition as if fully set forth herein. Use of another's trademark or trade dress violates the Lanham Act. Although the U.S. Patent and Trademark Office has yet to grant a trade mark for flavor, the Trademark and Appeal Board has not foreclosed the possibility flavor may be the subject to protection as a nontraditional trademark. *See In re Organon N.V.*, 79 USPQ2d 1639 (TTAB 2006). Therefore, NYPI believes a good faith basis exists for an extension of the law and upon which to bring a claim for protection of flavor as a nontraditional trademark under § 43(a) of the Lanham Act. Additionally and alternatively, NYPI also makes a trade dress claim for the visual manner in which it presents its menu product to customers.

67.     NYPI's use of specially sourced branded ingredients and innovative preparation and preservation techniques, contribute to the distinctive flavor to NYPI's products. NYPI claims a protected trademark interest in the distinctive flavor of its products.

68.     Defendants have infringed and/or diluted NYPI's protected trademark interest in the distinctive flavor of its products. Defendants' use of NYPI's protected trademark interest in the distinctive flavor of its products is likely to cause confusion as to the source of the goods and services, or as to the sponsorship or approval of such goods and services. Furthermore, Defendants' use of NYPI's protected trademark interest in the

distinctive flavor of its products dilutes NYPI's trademark and the quality of services NYPI

offers in the industry.

69.     Additionally and alternatively, NYPI's plating methods present NYPI's

products to customers in a distinctive visual manner. NYPI claims a protected trade dress

interest in the distinctive visual presentation of the product to customers.

70.     Defendants have infringed and/or diluted NYPI's protected trade dress

interest in the distinctive visual presentation of NYPI's product to customers. Defendants'

use of NYPI's protected trade dress interest in the distinctive visual presentation of NYPI's

product to customers, is likely to cause confusion as to the source of the goods and services,

or as to the sponsorship or approval of such goods and services. Furthermore, Defendants'

use of NYPI's protected trade dress interest in the distinctive visual presentation of NYPI's

product to customers, dilutes NYPI's trade dress and the quality of services NYPI offers in

the industry.

71.     Accordingly, NYPI brings claims under the authority of §43(a) of the

Lanham Act. 15 U.S.C. § 1125. NYPI seeks to recover profits from Defendants from the

infringement and/or dilution, and actual damages and costs, and attorney's fees, as

provided by 15 U.S.C. § 1117.

## Count 4

### Misappropriation of Trade Secrets

72.     Plaintiff hereby adopts and realleges each and every allegation previously set

forth in this Petition as if fully set forth herein.

73.     Texas recognizes a cause of action for the misappropriation of trade secrets where a defendant discloses or uses a trade secret in violation of a contractual or confidential relationship with the owner of the trade secret, after acquiring the trade secret by improper means, or after acquiring the trade secret with notice the disclosure was improper. Trade secrets are defined as any formula, pattern, device, or compilation of information that is used in its owner's business, and which gives its owner an opportunity to obtain an advantage over competitors who do not know or use it.

74.     Furthermore, Texas common law recognizes trade secret protection for recipes. *H.E. Butt Grocery Co. v. Moody's Quality Meats, Inc.*, 951 S.W.2d 33, 35 (Tex. App. 1997). Massachusetts, the only remaining jurisdiction that, like Texas, recognizes a cause of action for misappropriation of trade secrets at common law has also extended trade secret protection to recipes. *See Peggy Lawton Kitchens, Inc. v. Hogan*, 18 Mass. App. Ct. 937, 466 N.E.2d 138 (1984)(food company's recipe for chocolate chip cookies constituted trade secret). Jurisdictions subject to the Uniform Trade Secrets Act have likewise extended trade secret protection to recipes. *See 205 Corp. v. Brandow*, 517 N.W.2d 548 (Iowa 1994).

75.     NYPI's recipes, recipe books, plate specifications, ingredients information, supplier identities, and training and restaurant operations manuals were acquired, compiled and/or prepared by Anthony Russo and/or NYPI employees, were not generally known to NYPI's competitors, and represented the most critical proprietary information belonging to NYPI. Such information gives NYPI a competitive advantage over its competitors who

do not know or use the Trade Secrets. The Trade Secrets are not generally known in the industry.

76.     Despite their contractual and confidentiality obligations to NYPI, Hembree and others disclosed the Trade Secrets they learned while employed at NYPI to the Syal Defendants. Furthermore, despite settling the Hembree/NYPI Lawsuit, Hembree again violated his obligations to NYPI by disclosing NYPI's manuals to Phillip Rich, and by providing Rich with recipes copied from NYPI's recipes and instructing Rich not to deviate from the base recipes.

77.     Together, Hembree and Ravinder Syal jointly formed Gina's Licensing Company with Syal holding the primary interest, used the trade secrets, and later licensed them to their own franchisees. The Syal Defendants also gained direct access to NYPI's trade secrets by accessing FranConnect without authorization, using an existing franchisee's user name and password.

78.     The Syal Defendants knew Hembree and others were providing them and Gina's Licensing Company with NYPI's trade secrets, and further knew that Hembree and others had violated their contractual and confidentiality obligations with NYPI by disclosing the trade secrets. The Syal Defendants also knew that they were not authorized to use an existing NYPI franchisee's user name and password to access FranConnect. Finally, the individual Gina's Italian Kitchen franchises—in Clear Lake, Friendswood, and Deer Park—likewise misappropriated NYPI's trade secrets because they acquired the trade secrets with notice that disclosure of the trade secrets was improper.

27

79.     In furtherance of the scheme, ex-NYPI employees Nicola Notaricola, Evin Sanchez, Juan Garcia, and Jose Garcia, assisted in operating the Gina's locations, and training the employees at the Gina's locations. Defendants Notaricola, Sanchez, and Juan and Jose Garcia knew Defendants Ravidner Syal, his businesses, Adrian Hembree, and the individual Gina's locations, were using NYPI's trade secrets. Nonetheless, Defendants Notaricola, Sanchez, and Juan and Jose Garcia, who themselves had contractual or confidential relationships with NYPI by virtue of their former employment, disclosed those trade secrets to others through the training and expertise they provided to the individual Gina's locations.

80.     The franchisees, Rolling in the Dough, LLC, Kindling Restaurant Group, LLC, Kindling Restaurant Management, LLC, and their owners, Phillip Raskin and Polo Sung, by reason of disclosure made by the other defendants, were on notice that the Gina's franchises were using NYPI's Trade Secrets, and that the Trade Secrets had been improperly acquired. Nonetheless, the franchises and their owners continued to use the Trade Secrets, and participate in the continued disclosure of the Trade Secrets to new employees and new franchises.

81.     The Defendants' disclosure and/or use of NYPI's trade secrets constitute a misappropriation and, as such, entitles NYPI to recover from them all damages proximately caused by the same. The disclosure of such trade secrets has provided Defendants with an unfair competitive advantage as they have saved a significant amount of investment in research and development at NYPI's expense.

82.     Such damages should be based upon a disgorgement of Defendants' wrongful profits enjoyed as a result of the misappropriation of trade secrets and confidential information. Alternatively, such damages may be based upon a fair franchise and royalty fee that would compensate Plaintiff for Defendants' unauthorized use of NYPI's trade secrets.  Additionally, as a result of Defendants' misappropriation of trade secrets and other confidential information, NYPI is entitled to recover punitive damages against Defendants, in addition to whatever actual and consequential damages to which NYPI may be entitled. NYPI also seeks recovery of prejudgment and post-judgment interest as allowed by law and all costs of court.

## Count 5

### Violation of the Texas Theft Liability Act

83.     Plaintiff hereby adopts and realleges each and every allegation previously set forth in this Petition as if fully set forth herein.

84.     All Defendants violated the Texas Theft Liability Act by unlawfully appropriating NYPI's property, namely its Trade Secrets, with the intent to deprive NYPI of the value and benefit of those trade secrets. Trade secrets are recognized property rights under Texas law. NYPI owned its recipes, recipe books, plate specifications, and its lists of ingredients and lists of supplier identities, and training and restaurant operations manuals, and said information constituted NYPI's Trade Secrets.

85.     The Syal Defendants unlawfully appropriated those Trade Secrets by taking them without NYPI's consent. The Syal Defendants, without authorization to do so, used

an existing franchisee's user name and password to log in to FranConnect and download trade secret information. The Syal Defendants also obtained NYPI's trade secret information from Defendant Adrian Hembree, a person whom the Syal Defendants knew had acquired the trade secrets through a breach of trust. Furthermore, the Syal Defendants obtained NYPI's trade secrets with the intent to deprive NYPI of those trade secrets, and to use the trade secrets to compete against NYPI by establishing their own franchise system, Gina's Italian Kitchen.

86.     Defendants Nicola Notaricola, Evin Sanchez, Juan Garcia, and Jose Garcia, assisted in operating the Gina's locations, and training the employees at the Gina's locations. Defendants Notaricola, Sanchez, and Juan and Jose Garcia knew Syal, Hembree, their businesses, and the individual Gina's locations, were using NYPI's trade secrets. Nonetheless, Defendants Notaricola, Sanchez, and Juan and Jose Garcia, who themselves had contractual or confidential relationships with NYPI by virtue of their former employment, disclosed those trade secrets to others through the training and expertise they provided to the individual Gina's locations.

87.     As a result of the Defendants' theft of trade secrets, NYPI has sustained damages as a result. Three Gina's Italian Kitchen restaurants are using NYPI's trade secrets against NYPI in its home market, the Greater Houston metropolitan area, and deriving profits therefrom that rightfully belong to NYPI. Plaintiff also asserts, pursuant to the Theft Liability Act, that it is entitled to a recovery of attorney's fees if it prevails on its claim, and requests attorney's fees should Plaintiff so prevail.

**Count 6**

**Unfair Competition by Misappropriation**

88.     Plaintiff hereby adopts and realleges each and every allegation previously set forth in this Petition as if fully set forth herein.

89.     Defendants engaged in unfair competition by appropriating NYPI's turnkey Restaurant Franchise Product, created through the expenditure of labor, skill and money, and using it in competition against the plaintiff, thereby gaining an advantage in that competition, resulting in commercial damage to NYPI. Defendants' misappropriation represents a "free ride" because Defendants are burdened with little or none of the expense incurred by the NYPI in developing its turnkey franchise business, and even less risk.

90.     NYPI created its turnkey Restaurant Franchise Product through the expenditure of labor, skill and money. Defendants' misappropriated the turnkey Restaurant Franchise Product, taking more than just recipes, ingredients and supplier lists and identities, and training and restaurant operation manuals. Defendants use the same equipment and supplies in their franchises that NYPI uses. Defendants' misappropriation is so extensive and complete that they use the same ovens and other kitchen equipment, and order the same cleaning solvents, pizza boxes, take out containers and plastic eating utensils, aluminum foil, latex gloves, and many of the more common ingredients used by NYPI. While it would not be unusual to see some duplication of ordered items between competitors, the odds of half of the items and ingredients ordered being identical to NYPI's

are astronomical. Moreover, Gina's uses information from NYPI's training and operations manuals to train their employees to operate the franchises.

91.     Furthermore, even if this Honorable Court were to conclude that NYPI's recipes, recipe books, ingredient and supplier lists, and training and restaurant operations manuals, are not trade secrets, they nonetheless constitute a unique pecuniary interest developed by NYPI through the expenditure of labor, skill and money, and the Defendants' use of those things in competition with NYPI gives them a special advantage in competition, the proverbial "free ride," to the economic detriment of NYPI. In a matter of eight months Gina's has opened four locations, and is preparing to open seven more, one each in Pearland, the Woodlands, Sugar Land, Dallas, and San Antonio, and two in undisclosed locations. Only one of the locations, Humble, has failed. Gina's rapid growth in less than a year is due to the advantage it obtained by misappropriating NYPI's turnkey franchise business.

92.     The Defendants' misappropriation entitles NYPI to recover from them all damages proximately caused by the same. The misappropriation has provided Defendants with an unfair competitive advantage as they have saved a significant amount of investment in research and development at NYPI's expense, allowing them to compete more effectively, provide a greater margin of profitability for their franchisees, making Gina's franchises more attractive than NYPI franchises, and allowing the Syal Defendants to expand the Gina's chain at a more rapid pace than NYPI.

## Count 7

### Breach of Contract

93.     Plaintiff hereby adopts and realleges each and every allegation previously set forth in this Petition as if fully set forth herein.

94.     Defendants Evin Sanchez, Jose Garcia, and Nicola Notaricola all signed non-disclosure agreements as employees of NYPI or one of NYPI's franchises. The non-disclosure agreements were valid, enforceable contracts. Defendants agreed, for good and valuable consideration, not to (1) disclose, directly or indirectly, NYPI's trade secrets and other confidential information to third parties, and (2) use, or cause others to use, NYPI's trade secrets and confidential information against NYPI or to NYPI's detriment. Defendants acknowledged that NYPI's confidential information included recipes, trade secrets, specifications, "know-how," products, services, pricing lists, food preparation, marketing information, business plans, processes, techniques, customer lists, vendor lists, sources of supply, and other confidential disclosures of information related to the business. NYPI is a proper party to sue for breach of the non-disclosure agreements. NYPI and its franchisees performed under the terms of the contracts, providing Defendants will valuable trade secret and other confidential information. Defendants Evin Sanchez, Jose Garcia, and Nicola Notaricola all violated the terms of the non-disclosure agreements by (1) disclosing, directly or indirectly, NYPI's trade secrets and other confidential information to third parties, and (2) using, or causing others to use, NYPI's trade secrets and confidential information against NYPI or to NYPI's detriment. The defendants' individual and

collective breach of their non-disclosure agreements has damaged NYPI, including the loss of licensing fees and royalties, lost profits, and other damages. Furthermore, NYPI is entitled to recover reasonable attorney's fees and costs of litigation, pursuant to Texas Civil Practices & Remedies Code § 38.001. NYPI therefore makes an affirmative request under § 38.001 for the recovery of reasonable attorney's fees and costs of litigation.

## Count 8

### Tortious Interference with Existing Contracts

95.     Plaintiff hereby adopts and realleges each and every allegation previously set forth in this Petition as if fully set forth herein.

96.     The Syal Defendants, tortiously interred with existing non-disclosure agreements between NYPI and its former employees, by inducing those former employees to unlawfully disclose trade secrets to the Syal Defendants' franchisees. NYPI entered a valid and enforceable contracts with Adrian Hembree and Defendants Nicola Notaricola, Jose Garcia, and Evin Sanchez that included valid and enforceable non-disclosure agreements. Each individual Defendant acknowledged that he was receiving confidential information from NYPI, including the recipes, recipe books, plate specifications, ingredients information, supplier identities, and training manuals, and that the information is NYPI's trade secret. The non-disclosure agreements required each of them to refrain from disclosing trade secrets belonging to NYPI. Each of those Defendants promised not to use or disclose that information to the detriment of NYPI or in derogation of NYPI' rights.

34

97.     The Syal Defendants interfered with the non-disclosure agreements by inducing Hembree, Notaricola, Juan Garcia and Sanchez to breach their non-disclosure agreements with NYPI by further disclosing to the Syal Defendants' franchisees NYPI's trade secrets, and further by inducing Hembree, Notaricola, Juan Garcia and Sanchez to assist in disclosing those trade secrets to the individual Gina's Italian Kitchen franchises. Hembree, Notaricola, Juan Garcia and Sanchez did breach their NYPI non-disclosure agreements by helping the Syal Defendants to disclose NYPI's trade secrets to the individual Gina's Italian Kitchen franchises. The Syal Defendants were without privilege or justification to interfere with NYPI's non-disclosure agreements with Hembree, Notaricola, Juan Garcia and Sanchez.

98.     Furthermore, on information and belief, the Syal Defendants and their accomplices have attempted to interfere with NYPI's contracts with its other franchisees. The Syal Defendants have done so by attempting to convince NYPI's existing franchisees to open a Gina's Italian Kitchen.

99.     The interference caused NYPI proximate injury and damages. Such damages may be based upon the franchise and royalty fees that should have been paid Defendants to start a new franchise with NYPI, use NYPI's trademarks, trade name, trade dress and trade secrets. Further, insofar as the aforementioned conduct of Defendants was willful and motivated by malice, fraud or conscious disregard to the rights and welfare of NYPI and its franchisees, NYPI asserts that it is entitled to recover exemplary damages as well as its reasonable and necessary attorney's fees incurred to prosecute this action against

Defendants. In addition to actual, injunctive, declaratory, equitable and exemplary damages requested above (plus attorney's fees), NYPI would show that it is entitled to recover prejudgment and post-judgment interest as allowed by law and all costs of court.

## Count 9

## Conspiracy

100.    Plaintiff hereby adopts and realleges each and every allegation previously set forth in this Petition as if fully set forth herein.

101.    Defendants Ravinder Syal, Syal & Sons, Inc., Super Duper, Inc., Gina's Licensing Company, LLC, Adrian Hembree, Nicola Notaricola, Evin Sanchez, Juan Garcia, Jose Garcia, and Robert Salcedo have all conspired with each other and with others to: (1) misappropriate NYPI's trade secrets and confidential information; (2) breach the fiduciary and contractual duties owed to NYPI by Hembree to maintain the confidentiality of information to which Hembree had access to as an officer and franchisee of NYPI; (3) breach the contractual duties owed by Hembree to NYPI to maintain the confidentiality of information provided by NYPI to Hembree as a franchisee; and (4) tortiously interfere with NYPI's existing contractual relationships with franchisees and suppliers. Additionally, the Syal Defendants and Adrian Hembree conspired to violate the Computer Fraud & Abuse Act, and the Stored Wire and Electronic Communications and Transactional Record Access Act, by using NYPI franchisee user names and passwords to access FranConnect without authorization, or exceeded the scope of authorized access, to obtain the Trade Secrets.

36

## Count 10

### Joint and Several Liability

102.    Plaintiff hereby adopts and realleges each and every allegation previously set forth in this Petition as if fully set forth herein.

103.    Such conspiracy and wrongful assistance has caused Plaintiff damages within the jurisdictional limits of this court. Plaintiff requests all relief and remedies requested herein be awarded against each of the Defendants jointly and severally.

## Count 11

### Constructive Trust and Accounting

104.    Plaintiff hereby adopts and realleges each and every allegation previously set forth in this Petition as if fully set forth herein.

105.    Because Defendants misappropriated NYPI's trade secrets, they have been able to establish a competing chain of franchises, to wit, Gina's Italian Kitchen restaurants. The Syal Defendants have received franchise fees for the sale and establishment of Gina's Italian Kitchen restaurants, and receive royalties of at least ten percent (10%) of each franchise's profits. NYPI charges franchise fees and royalties on its franchises. NYPI additionally charges advertising fees, for promotion and advertising of the franchise. NYPI is entitled to, and requests, imposition of a constructive trust on the proceeds obtained by the Syal Defendants as a result of their unlawful misappropriation, disclosure, and use of NYPI's trade secrets.

106.    Additionally, the franchise locations themselves are realizing profits from the unlawful misappropriation, disclosure and use of NYPI's trade secrets. Accordingly, NYPI is entitled to, and requests, imposition of a constructive trust on the proceeds of each Gina's Italian Kitchen, and that such proceeds be paid into the registry of the Court. Said proceeds directly result from the unlawful misappropriation, disclosure, and use of NYPI's trade secrets.

107.    Finally, NYPI is further entitled to, and requests, an accounting from each Defendant and the franchises of all profits, and an award of damages for all amounts obtained as a result of the unlawful misappropriation, disclosure, and use of NYPI's trade secrets.

## PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION AND A PERMANENT INJUNCTION

### Request for Preliminary Injunction

108.    Plaintiff hereby adopts and realleges each and every allegation previously set forth in this Petition as if fully set forth herein.

109.    Injunctive relief is appropriate in a trade secrets misappropriation case when the Plaintiff establishes that (1) it has a substantial likelihood of prevailing on the merits, (2) there is a substantial threat it will suffer irreparable injury if the preliminary injunction is denied, (3) the threatened injury to the plaintiff outweighs the potential injury posed by the injunction to the defendant, and (4) granting the injunction will not disserve the public interest. *See Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003); *see also Zoecon Industries, a Div. of Zoecon Corp. v. American Sotckman Tag Co.*, 713 F.2d

38

1174, 1180 (5th Cir. 1983)(equitable relief in form of injunction is proper remedy for the breach of a confidential relationship).

## Likelihood of Success on the Merits

110.    There is a substantial likelihood that NYPI will prevail on the merits of its claim for misappropriation of trade secrets because trade secrets are a recognized, protected property interest under Texas law. Texas law recognizes a protected property interest in any formula, pattern, device, or compilation of information that is used in one's business, and which gives one an opportunity to obtain an advantage over competitors who do not know or use it.

111.    NYPI's recipes, recipe books, plate specifications, specially sourced branded ingredients, supplier identities, and training and operations manuals were substantially secret and not known outside the business, except for employees of NYPI and NYPI's franchises. NYPI took reasonable steps to preserve the secrecy of its recipes, recipe books, plate specifications, ingredients, and suppliers by including non-disclosure and confidentiality agreements in each franchisee agreement, having franchisees obtain non-disclosure and confidentiality agreements from each employee, and having an auditing program in place to monitor and ensure franchisee compliance with NYPI's policies and procedures. NYPI's ingredients and suppliers were not easily ascertainable, and provided NYPI with an advantage over competitors who did not know or use NYPI's recipes, recipe books, plate specifications, ingredients, and suppliers.

112.    Texas recognizes a cause of action for the misappropriation of trade secrets where a defendant discloses or uses a trade secret in violation of a contractual or confidential relationship with the owner of the trade secret, after acquiring the trade secret by improper means, or after acquiring the trade secret with notice the disclosure was improper. Defendants acquired NYPI's Trade Secrets by unlawfully accessing FranConnect and downloading Trade Secrets. Defendants also acquired NYPI's Trade Secrets through violation of confidential and contractual relationships, and Defendants had notice that disclosure of the Trade Secrets was improper.

113.    Evidence in support of NYPI's application for a preliminary injunction supports a conclusion that NYPI will prevail on the merits of its claim.

**Irreparable Harm**

114.    To establish a substantial threat of irreparable injury or harm, a plaintiff must clearly show some concrete injury resulting from the defendant's actions, that cannot be redressed either by an equitable or legal remedy following trial.

115.    Plaintiff will likely suffer imminent and irreparable injury if Defendants Ravinder Syal, Adrian Hembree, Syal & Sons, Super Duper, Inc., Gina's Licensing Company, Gina's Italian Kitchen (Deer Park), Rollin in the Dough d/b/a Gina's Italian Kitchen (Clear Lake), Kindling Restaurant Group, Kindling Restaurant Management d/b/a Gina's Italian Kitchen (Friendswood), Evin Sanchez, Nicola Notaricola, Juan Garcia, Jose Garcia, Phillip Raskin and Polo Sun are not immediately restrained from using and/or disclosing NYPI's trade secrets.

40

116.     Specifically, NYPI will likely suffer irreparable injury if Ravinder Syal, Adrian Hembree, Syal & Sons, and Gina's Licensing Company are not enjoined while this suit is pending from continuing to use and/or disclose NYPI's trade secrets. The evidence in support of NYPI's application for a preliminary injunction will demonstrate that the Syal Defendants are in the business of licensing Italian restaurant and pizzeria franchises, in direct competition with NYPI. Between December 2012 and August 2013, the Syal Defendants have opened and/or licensed four Gina's Italian Kitchen franchises in the greater Houston metropolitan area, and disclosed NYPI's trade secrets to those franchises. Furthermore, the Syal Defendants are continuing their efforts to sell and open new Gina's Italian Kitchen franchises, and in the process of so doing, will continue to disclose NYPI's trade secrets to their new franchisees.

117.     Plaintiff will also likely suffer irreparable injury if Defendants Adrian Hembree, Evin Sanchez, Nicola Notaricola, Juan Garcia, and Jose Garcia are not enjoined while this suit is pending from continuing to use and/or disclose NYPI's trade secrets. The evidence in support of NYPI's application for a preliminary injunction will demonstrate that these defendants have been actively involved in the Syal Defendants' sale of franchises, and have actively disclosed NYPI's trade secrets to the franchises. Defendants Adrian Hembree, Evin Sanchez, Nicola Notaricola, Juan Garcia, and Jose Garcia have been actively training the new franchises, further disclosing NYPI's trade secrets in the process, and in all likelihood will continue to if allowed to do so.

118.    Plaintiff will further likely suffer irreparable injury if Defendants Gina's Italian Kitchen (Deer Park), Rolling in the Dough d/b/a Gina's Italian Kitchen (Clear Lake); Kindling Restaurant Group, and Kindling Restaurant Management d/b/a Gina's Italian Kitchen (Friendswood), are not enjoined while this suit is pending from disclosing NYPI's trade secrets. The evidence in support of NYPI's application for a preliminary injunction will demonstrate that each of these Defendant franchises hires employees, and discloses to those employees the trade secrets they obtained while on notice the trade secrets were improperly obtained from NYPI by other defendants. Each of the Gina's franchises do not have any procedures in place to maintain the secrecy of the trade secrets.

119.    Plaintiff will also likely suffer irreparable injury if these Defendants are not enjoined while this suit is pending from continuing to use NYPI's trade secrets. Each Gina's Italian Kitchen franchise is in direct competition with NYPI, and are located within twenty miles of NYPI franchises. For example, the Gina's Italian Kitchen in Clear Lake is located approximately 10 miles from NYPI's franchise in League City, while the Friendswood location is located approximately 9 miles from the League City NYPI. The Gina's franchises are using NYPI's recipes and other trade secrets to compete successfully against NYPI, thus depriving NYPI of profits it would otherwise capture.

### No Adequate Remedy at Law

120.    There is no adequate remedy at law because all defendants continue to disclose and use NYPI's trade secrets. By the time the merits of NYPI's claim are fully litigated, even if NYPI obtains a money judgment, the harm done, the disclosure of trade

secrets, cannot be undone. Ravinder Syal, Adrian Hembree, Syal & Sons, Super Duper, Inc., Gina's Licensing Company, Evin Sanchez, Nicola Notaricola, Juan Garcia, and Jose Garcia will have continued to disclose the trade secrets to new Gina's franchises, and the Gina's franchises themselves will have continued to disclose the trade secrets to dozens upon dozens of employees who will be under no confidentiality obligation whatsoever to refrain from disclosing or using NYPI's trade secrets.

### Harm to Plaintiff Outweighs Harm to Defendants

121.    The harm faced by NYPI outweighs the harm that would be sustained by Defendants if the preliminary order were not granted. The harm faced by NYPI is the dissemination of its trade secret recipes, recipe books, and plate specifications, as well as disclosure of the very unique ingredients used by NYPI to distinguish the flavor and quality of its food from competitors, and the identification of the suppliers it uses to obtain those ingredients. The ingredients and suppliers were identified, and recipes, recipe books, and plate specifications were developed, over many years of trial and error, at a great cost of time and money to NYPI's owner, Anthony Russo. Further, NYPI's training and operations manuals will likewise be disseminated. The training and operations manuals were developed, over many years of trial and error, at a great cost of time and money to NYPI's owner, Anthony Russo.

122.    On the other hand, the loss of the use of the recipes, recipe books, and plate specifications, while detrimental to the Defendants, would not deprive them of the ability to continue to provide Italian food to their customers. An injunction would require the Syal

43

Defendants, Adrian Hembree, and Gina's Restaurant franchises to change the certain specialty ingredients identified by NYPI used in the Gina's recipes. The Syal Defendants, Adrian Hembree, and Gina's Restaurant franchises, however, would not be prevented from using other ingredients, or from developing their own list of specially sourced ingredients for use in their own recipes. Nor would an injunction prevent the Defendants from developing their own training and operations manuals.

123.   Nor would an injunction prevent defendants Adrian Hembree, Evin Sanchez, Nicola Notaricola, Juan Garcia or Jose Garcia from training new Gina's franchisees, so long as they did not do so using NYPI's trade secrets.

124.   Finally, an injunction would not prevent the Syal Defendants, from continuing to develop the Gina's Italian Kitchen franchise system; it would only prevent them from doing so using NYPI's Trade Secrets.

### No Adverse Effect on Public Interest

125.   Issuance of a preliminary injunction would not adversely affect the public interest and public policy. The function of trade secret law is that of "condemning the employment of improper means to procure a trade secret." Preventing the employment of improper means to obtain a trade secret clearly fosters fair competition and a healthy commercial market.

### Bond

126.   NYPI is willing to post a bond in the amount the Court deems appropriate.

## Request for Permanent Injunction

127.    NYPI asks the court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against Defendants.

## PRAYER

**WHEREFORE**, NYPI prays for judgment as follows:

128.    For the foregoing reasons, NYPI asks the Court to do the following:

a.    Grant a preliminary injunction and permanent injunction, against Defendants Ravinder Syal, Adrian Hembree, Syal & Sons, Super Duper, Inc., and Gina's Licensing Company, and their shareholders, directors, officers, employees, agents, representatives, successors, heirs and assigns, and all others acting on their behalf, from using or disclosing NYPI's trade secret recipes, recipe books, plate specifications, ingredient lists, and supplier lists, identified by Anthony Russo, and attached to this order as Exhibit "A," and filed under seal, or from selling or disclosing same to Gina's Italian Kitchen franchise owners and/or employees.

b.    Grant a preliminary injunction and permanent injunction, against Defendants Adrian Hembree, Juan Garcia, Jose Garcia, Erin Sanchez, and Nicola Notaricola, and their employees, agents, representatives, successors, heirs and assigns, and all others acting on their behalf, from using or disclosing NYPI's trade secret recipes, recipe books, plate specifications, ingredient

lists, and supplier lists, identified by Anthony Russo, and attached to this order as Exhibit "A," and filed under seal, or from selling or disclosing same to Gina's Italian Kitchen franchise owners and/or employees, and from training Gina's Italian Kitchen franchise owners and/or employees regarding NYPI's methodology and operating procedures.

c.      Grant a preliminary injunction and permanent injunction, against Defendants Gina's Italian Kitchen (Deer Park), Kindling Restaurant Group, Kindling Restaurant Management d/b/a Gina's Italian Kitchen (Friendswood), Rollin in the Dough, Inc. d/b/a Gina's Italian Kitchen (Clear Lake), Polo Sun, and Phillip Raskin, and their shareholders, directors, officers, employees, agents, representatives, successors, heirs and assigns, and all others acting on their behalf, from using or disclosing NYPI's trade secret recipes, recipe books, plate specifications, ingredient lists, and supplier lists, identified by Anthony Russo, and attached to this order as Exhibit "A," and filed under seal, or from selling or disclosing same to Gina's Italian Kitchen employees.

d.      Enter judgment for NYPI for actual and exemplary damages.

e.      Enter judgment for NYPI for prejudgment and postjudgment interest.

f.      Enter judgment for NYPI for court costs.

g.      Enter judgment for NYPI for attorney fees pursuant to Texas Civil Practice & Remedies Code chapter 38.

h.     An accounting of defendants' profits resulting from their misappropriation of plaintiff's trade secrets and confidential information;

i.     Award damages against defendants jointly and severally, for an amount that will justly compensate plaintiff for the loss of its confidential information, plus interest from the date of entry;

j.     Award further amounts for damages that plaintiff suffers prior to the granting of an injunction, plus interest;

k.     Permanently enjoin defendants from the use or disclosure of plaintiff's trade secret or its confidential information;

l.     Impose a constructive trust on the proceeds of each Gina's Italian Kitchen, and that such proceeds be paid into the registry of the Court; and,

m.    Grant any other relief to which plaintiff is entitled.

                                    Respectfully submitted,

                                    THE VETHAN LAW FIRM P.C.

                                    By: /s/ Charles M.R. Vethan
                                    Charles M.R. Vethan
                                    Texas Bar No. 00791852
                                    Federal No. 19566
                                    Joseph L. Lanza
                                    Texas Bar. No. 00784447
                                    3501 Allen Parkway
                                    Houston, Texas  77019
                                    Telephone: (713) 526-2222
                                    Facsimile:  (713) 526-2230
                                    Attorneys for Plaintiff