UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| NEW YORK PIZZERIA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-335 |
| | § | |
| RAVINDER SYAL, *et al*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM AND ORDER**

Even in this land of Tex-Mex and barbecue, people are passionate about pizza. In this case, a Houston-area pizza chain named New York Pizzeria filed suit alleging that a former employee conspired with others to steal secret recipes and other proprietary information so they could open a competing chain. Defendants contend, however, that New York Pizzeria is trying to get a second slice of the pie. They seek dismissal, arguing that this federal lawsuit is barred by the final judgment in a prior state court suit between New York Pizzeria and one of the Defendants, as well as a contractual release of claims between New York Pizzeria and that same defendant. The Court agrees that the release precludes this second suit against the individual who entered into that contract—Defendant Adrian Hembree. A more difficult question is whether *res judicata* bars the claims New York Pizzeria asserts against the other Defendants who were not parties in the first case but now are alleged to be Hembree's coconspirators.

## I. BACKGROUND

New York Pizzeria, Inc. (NYPI) is a franchisor of restaurants founded and solely owned by Gerardo Anthony Russo. Adrian Hembree is a former vice president of NYPI and former owner of an NYPI-franchised restaurant. Hembree's employment was terminated in March 2011.

In November 2011, NYPI and Hembree[1] entered into a settlement agreement in which NYPI assumed ownership of Hembree's franchised restaurant in exchange for payment of $466,000 (the First Settlement Agreement). The agreement contained provisions requiring Hembree to return documentation relating to the restaurant's operations and employees. It also provided that each party would release the other from "liabilities of any kind or nature whatsoever, at law and in equity, whether known or unknown, . . . foreseen or unforeseen." *Id.* at 4–5.

After the agreement was executed, NYPI refused to pay the $466,000 because of Hembree's alleged failure to honor his obligations under the agreement. Hembree subsequently brought suit in state court to enforce payment. NYPI asserted counterclaims, many of which alleged that Hembree had breached the settlement agreement on which he was seeking payment. NYPI also asserted

---

[1] Russo, Gina Hembree, and Salcedo/Hembree Investments, LLC were also party to the agreement, but are not named in this suit. For simplicity, unless otherwise noted, this order only refers to NYPI and Hembree in describing the First Settlement Agreement and the state court lawsuit.

counterclaims for misappropriation of trade secrets and under the Texas Theft Liability Act based on allegations that Hembree was using NYPI's trade secrets to develop his own restaurants. The final counterclaim asserted was for conspiracy, alleging that the three plaintiffs in that case—Hembree, his wife, and their business Salcedo/Hembree Investments, LLC—conspired to misappropriate NYPI's trade secrets. The pleading collectively labelled the identified conspirators as the "Hembree Parties."

In December 2012, the state court granted Hembree partial summary judgment on NYPI's fraudulent inducement claim and all counterclaims "based upon pre-settlement conduct and contracts." Docket Entry No. 15-7 at 2. About a month after this ruling, the parties signed a settlement agreement (the Second Settlement Agreement) (Docket Entry No. 18-1), and the court dismissed the case with prejudice in March 2013 (Docket Entry No. 15-3).

NYPI rolled out this federal suit in September 2013. In addition to Hembree, the suit names the following parties:

- Ravinder Syal, who allegedly conspired with Hembree and who owns a number of the defendant businesses;

- Gina's Licensing Company, which is jointly owned by Hembree and Syal and which receives ten percent of the profits of the various Gina's Italian Kitchen restaurants;

- Syal & Sons, LLC and Super Duper Inc., corporations owned by Ravinder Syal that allegedly played a role in the violations;

- a number of Gina's Italian Kitchen franchisee restaurants: Gina's Italian Kitchen (Deer Park), Rollin In The Dough, Inc. d/b/a Gina's Italian Kitchen (Clear Lake), Kindling Restaurant Management, LLC d/b/a Gina's Italian Kitchen (Friendswood);

- Kindling Restaurant Group, LLC, a holding company;

- Robert Salcedo, a part-owner of Salcedo/Hembree Investments LLC, a former NYPI franchisee;

- Juan Garcia, Jose Garcia, Nicola Notarnicola and Evin Sanchez, former NYPI employees hired by Syal; and

- Polo Sun and Philip Raskin, owners of Gina's Italian Kitchen franchisee restaurants.

NYPI asserts a number of claims against the Defendants in this case, including the following (although not every claim is made against every defendant):

- Violation of the Computer Fraud and Abuse Act (CFAA) and the Stored Wire and Electronic Communications and Transactional Record Access Act (SWECTRA) for improperly accessing a computer system to download NYPI's proprietary information;

- violation of the Lanham Act for copying NYPI's distinctive flavor and plating methods;

- misappropriation of trade secrets, violation of the Texas Theft Liability Act, and engagement in unfair competition for using NYPI's recipes, recipe books, plate specifications, ingredients, suppliers, and training and restaurant operations manuals;

- breach of, and tortious interference with, nondisclosure agreements;

- conspiracy to misappropriate NYPI's trade secrets and confidential information, and to breach fiduciary and contractual duties; and

- aiding and abetting the other defendants' violations.

NYPI's claims are based, in part, on facts that came to light after the dismissal of the state court suit. The complaint, for example, asserts that NYPI's "auditor" taped incriminating conversations with Gina's restaurant personnel in June 2013, and that Gina's Licensing Company's CEO testified in September 2013 that Hembree gave him NYPI's internal manuals.

## II. STANDARD OF REVIEW

Defendants filed a motion to dismiss, or in the alternative for summary judgment, on the grounds of (1) claim preclusion and (2) waiver and release. The motion can likely be decided under either procedural vehicle because it relies only on the settlement agreement and prior state court pleadings (which can probably be considered in a Rule 12 motion), but the Court will treat this as a summary judgment motion. Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After Defendants filed their motion, bankruptcy proceedings involving some of the defendants resulted in a stay of this case. That stay is now lifted, and the Court can decide the motion.

## III. CLAIMS AGAINST HEMBREE

The Defendants assert that the claims against Hembree must be dismissed because the First Settlement Agreement released him from all future claims. That

agreement, in relevant part, states:

> NYPI . . . hereby irrevocably and unconditionally waives, releases, and forever discharges HEMBREE . . . from any and all claims, charges, demands, sums of money, actions, rights, promises, agreements, cause of action [sic], obligations and liabilities of any kind or nature whatsoever, at law or in equity, whether known or unknown, existing or contingent, suspected or unsuspected, foreseen or unforeseen, apparent or concealed . . . which NYPI now or in the future may have or claim to have against HEMBREE."

Docket Entry No. 15-4 at 4–5.

In Texas, "a valid release may encompass unknown claims and damages that develop in the future." *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000). While it is true that "general categorical release clauses are narrowly construed," *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991), the one at issue here uses exceptionally broad language. Because the First Settlement Agreement categorically released Hembree from liability to NYPI for past and future claims, the claims against Hembree are dismissed.[2]

---

[2] Indeed, NYPI does not make any argument based on the language of the release for why it does not apply to these claims. Instead, it argues that the state court's summary judgment order contained "an implied finding" that Hembree owed continuing confidentiality duties to NYPI after the agreement was signed, because the order limited its ruling to "pre-settlement conduct and contracts." Docket Entry No. 18 ¶ 67. To the extent NYPI is arguing that the state court made a determination concerning the scope of the release that is entitled to preclusive effect, the Court rejects that argument. First, the state court's order did not contain an implied finding that Hembree owed continuing duties. Although NYPI may have argued that Hembree had continuing duties not to disclose trade secrets, *see* Docket Entry No. 18 ¶ 67, the court only ruled on presettlement conduct because Hembree's motion in that case sought summary judgment on presettlement conduct and contracts. *See* Docket Entry No. 15-5. More

## IV.   CLAIMS AGAINST THE NON-HEMBREE DEFENDANTS

The non-Hembree defendants argue that the claims against them must be tossed for two reasons: (1) the release of Hembree from liability extinguished any liability resulting from his disclosure of NYPI's claimed trade secrets, and (2) NYPI's claims are precluded by the dismissal of the prior state court suit because the alleged coconspirators are in privity with Hembree.

### A.   Liability release

Only Hembree signed the First Settlement Agreement with NYPI, but the non-Hembree defendants claim that the agreement "effectively negates the claims that have been brought against the other defendants."  Docket Entry No. 15 ¶ 39. They argue that once the agreement released Hembree from liability and his confidentiality obligations, NYPI's "alleged trade secrets were no longer 'trade secrets' as a matter of law, and could be freely used, disclosed, and even sold by Hembree without liability to him, to anyone helping him or to the persons to whom he disclosed or sold the information." *Id.*

For this argument, Defendants rely on *Expansion Plus Inc. v. Brown-*

---

fundamentally, the state court's subsequent dismissal with prejudice of *all* claims pursuant to the parties' joint motion to dismiss (Docket Entry No. 15-3), and not the summary judgment order, is the final judgment relevant to the preclusive effect of the state court's ruling.  *See Mower v. Boyer*, 811 S.W.2d 560, 562–63 (Tex. 1991) (holding that a partial summary judgment order was not "entitled to collateral estoppel effect" where "the issue . . . was not expressly raised or decided, the decision was not supported by a reasoned opinion, and the judgment was not reviewable by appeal").

*Forman Corp.*, 132 F.3d 1083 (5th Cir. 1998). Expansion Plus developed a credit card "data capture" program, and contracted with Brown-Forman to promote it. *Id.* at 1084. In the parties' first agreement, they agreed that the confidentiality provisions regarding the program would "remain in effect until three years after the termination or expiration of the agreement." *Id.* They then executed a new contract that assigned ownership of the program to Brown-Forman. *Id.* at 1085. The contract expressly superseded the prior agreement, and contained no confidentiality clause. *Id.* at 1085. More than three years after the second agreement was signed, and thus after the duty of confidentiality from the first contract had expired, Brown-Forman sold the program and Expansion Plus sued for misappropriation of trade secrets and breach of a duty of confidentiality. *Id.* The Fifth Circuit affirmed a grant of summary judgment dismissing the case on the ground that the sale had occurred after the duty of confidentiality from the first agreement had expired. *Id.* at 1086.

Just as Brown-Forman was able to do what it pleased with its technology after its contractual duty had expired, Hembree's confidentiality obligations may have expired when he was categorically released from "any and all . . . promises, agreements, . . . obligations and liabilities of any kind or nature whatsoever." If that is the case, then just as the parties who received the technology from Brown-Forman had no liability in *Expansion Plus*, Hembree's alleged coconspirators may

8 / 19

not be subject to liability for using information that Hembree had no obligation to keep confidential.

The present record and briefing, however, are insufficient for the purposes of determining whether Hembree was completely released of his confidentiality obligations with regard to NYPI's claimed trade secrets. First, full copies of Hembree's contractual confidentiality obligations are not included in the pleadings. Second, while the First Settlement Agreement released Hembree from certain obligations, it also required him to return copies of documents with information about the restaurant and its inventory (such as information related to Hembree's NYPI-franchised restaurant's purchase history and employees); the extent to which this requirement may have preserved NYPI's trade secret interest is unclear. Finally, the lack of clarity in the timeline makes it difficult to determine which disclosures occurred after Hembree was released from confidentiality obligations and which occurred before that. *See Sharma v. Vinmar Intern., Ltd.*, 231 S.W.3d 405, 424 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (a person who "discovers the secret by improper means" is liable for disclosure or use of a trade secret). No discovery has been conducted that would help resolve these issues. The Court therefore declines to rule on the question of the non-Hembree defendants' liability arising from Hembree's disclosure of the claimed trade secrets

at this stage of the litigation. Defendants may reurge this argument when a sufficient factual record is developed.

### B. Claim preclusion

Even if not barred by the First Settlement Agreement, the Defendants assert that all of NYPI's claims are precluded by the state court's dismissal of Hembree's counterclaims against NYPI. Although the non-Hembree defendants were not parties in that case, they argue they nonetheless may invoke that judgment for purposes of claim preclusion because NYPI alleges they are coconspirators.

Claim preclusion, traditionally labelled *res judicata*,[3] "precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action."[4] *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). "An agreed judgment of dismissal in settlement of a controversy is a judgment on the merits" for the purposes of claim preclusion, and is conclusive on both "matters actually raised and litigated"

---

[3] Although the Defendants assert both claim and issue preclusion, the Court finds that the partial summary judgment order in the state court case has no issue preclusive effect. To determine whether a nonfinal order has issue preclusive effect, the court considers "(1) whether the parties were fully heard, (2) that the court supported its decision with a reasoned opinion, and (3) that the decision was subject to appeal or was in fact reviewed on appeal." *Mower*, 811 S.W.2d at 562. The state court does not appear to have issued an opinion detailing its reasons for granting Hembree's partial summary judgment motion, *see* Docket Entry No. 15-7, and the subsequent dismissal of the case pursuant to the Second Settlement Agreement rendered the court's earlier decision nonappealable.

[4] In determining the preclusive effect of a Texas state court judgment, this Court applies Texas law. *See Shimon v. Sewerage & Water Bd. Of New Orleans*, 565 F.3d 195, 199 (5th Cir. 2009).

and "every other matter that could have been litigated and decided as an incident to or essentially connected with the subject matter of the prior litigation." *Freeman v. Cherokee Water Co.*, 11 S.W.3d 480, 483 (Tex. App.—Texarkana 2000, pet. denied). The party invoking claim preclusion must establish that: (1) the preclusive judgment was a final judgment on the merits by a court of competent jurisdiction; (2) the parties to both actions were identical or in privity with each other; and (3) the claims raised in the second action are based on the same claims "as were raised or could have been raised in the first action." *Amstadt*, 919 S.W.2d at 652.

The second element of that test—in particular, the question whether the non-Hembree defendants are in privity with Hembree—is central to this dispute. "Privity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation." *Amstadt*, 919 S.W.2d at 653. "There is no general definition of privity that can be automatically applied in all res judicata cases; the circumstances of each case must be examined." *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992); *see also Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990) ("Privity is merely another way of saying that there is sufficient identity between parties to prior and subsequent suits for res judicata to apply. . . . [I]t is nothing more than a 'legal conclusion that the relationship between the one who is a party on the record and the non-party is

sufficiently close to afford application of the principle of preclusion.'"). Texas courts, however, have explained "at least three ways" in which parties may be found to be in privity: "(1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action." *Amstadt*, 919 S.W.2d at 653.

The Defendants assert that "[a]s a matter of Texas law, persons who are alleged to have acted in concert with one another, or who are alleged to be vicariously liable for one another's actions, are in privity for purposes of *res judicata* analysis." Docket Entry No. 15 at 13 n.18 (citing *Soto v. Phillips*, 836 S.W.2d 266, 269–70 (Tex. App.—San Antonio 1992, writ denied)). As alleged coconspirators, the Defendants argue, they would be vicariously liable for Hembree's actions; because the claims against Hembree were dismissed, they cannot now be sued. The sole Texas authority cited for this proposition is *Soto v. Phillips*, 836 S.W.2d 266 (Tex. App.—San Antonio 1992, writ denied). That case, however, simply found that a principal-agent relationship between two parties, as well as the absence of circumstances justifying an exception,[5] established privity.

---

[5] *Soto* cites the Restatement (Second) of Judgments, under which "[a] judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct" except when

> (a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or

*Id.* at 269–70 & 269 n.2. It did not resolve the question whether alleged coconspirators are automatically in privity with each other for claim preclusion purposes. *See RenewData Corp. v. eMag Solutions, LLC*, 2009 WL 1255583, at *5 (Tex. App.—Austin May 6, 2009, pet. denied) (finding reliance on *Soto* for the principle that parties alleged to have acted in concert are in privity "misplaced").

The Defendants argue that even if *Soto* did not set forth a clear rule, "every court to have addressed the issue has found that alleged co-conspirators are in privity with one another for *res judicata* purposes." Docket Entry No. 19 ¶ 7. While it is true that some courts have found that coconspirators are in privity, those cases are not all that common and do not purport to establish a categorical rule. And other courts, including Texas Courts of Appeals, have at times declined to find privity in conspiracy cases. *See Rogers v. Walker*, 2013 WL 2298449, at *4 (Tex. App.—Corpus Christi May 23, 2013, pet. denied) (denying summary judgment on *res judicata* grounds because "on their face, the conspiracy allegations in this suit do not conclusively establish" any of the three established ways in which privity can be found under *Amstadt*); *RenewData*, 2009 WL 1255583 at *4–5 (declining to find alleged coconspirators in privity when the prior

---

      (b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.

RESTATEMENT (SECOND) OF JUDGMENTS § 51(1). For the reasons discussed *infra*, the exceptions are implicated here.

suit did not involve a conspiracy claim, and therefore when the prior defendant "had no . . . interest in disproving a conspiracy with the new defendants");[6] *see also Novak v. World Bank*, 703 F.2d 1305, 1309 & n.11 (D.C. Cir. 1983) ("[W]e decline to extend the limited concept of privy to co-conspirators.").

This accords with the principle that "[n]onmutual claim preclusion is generally disfavored," *Novell, Inc. v. Microsoft Corp.*, 429 F. App'x 254, 261 (4th Cir. 2011), as the arguments in favor of it "are substantially weaker than the arguments for nonmutual issue preclusion," *Sidag Aktiengesellschaft v. Smoked Foods Products Co., Inc.*, 776 F.2d 1270, 1275 n.4 (5th Cir. 1985). In addressing this area, the leading federal procedure treatise goes so far as to state that courts often use "[b]ogus findings of privity" to support decisions that actually apply nonmutual claim preclusion (which, unlike nonmutual issue preclusion, remains relatively undeveloped). *See* 18A Charles Alan Wright, Arthur R. Miller &

---

[6] In *Jonalstem, Ltd. v. Corpus Christi Nat. Bank, N.A.*, a Texas Court of Appeals found alleged coconspirators in privity with the defendant in a prior action for claim preclusion purposes. 923 S.W.2d 701, 705 (Tex. App.—Corpus Christi 1996, writ denied). It did so on the ground that the prior defendant "had an interest in the first suit in demonstrating that no conspiracy existed between it" and the new defendants. For the reasons discussed *infra*, the Court finds this case distinguishable, and relies instead on *Rogers*, *RenewData*, and other authorities' discussions of privity. But to the extent that the Texas cases are in direct conflict, this Court would be required to make an "*Erie* guess" on how the Texas Supreme Court would resolve this split. *See Assoc. Intern. Ins. Co. v. Blythe*, 286 F.3d 780, 783 (5th Cir. 2002) (when the Texas Supreme Court has not ruled on an issue, the federal court "must apply Texas law, using its best judgment as to what the Texas Supreme Court would do if presented with the same case," and must "attempt to predict state law, not to create or modify it" (footnotes and internal quotation marks omitted)). This Court predicts that the Texas Supreme Court would not adopt a rule that alleged coconspirators are always in privity for the purposes of claim preclusion, but would instead hold that courts must consider whether the circumstances justify such a ruling. *See infra*.

Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4464.1 (2d ed. 2002).

The cases in which courts have found privity for coconspirators are ones in which the second suit appears to be "no more than a last desperate effort" by an unsuccessful plaintiff pursuing a "thin claim" who "cannot show any good reasons to justify a second chance," and when "the new party can show good reasons why he should have been joined in the first action." 18A Wright, Miller & Cooper, *supra*, § 4464.1. In *Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir. 1972), for example, "the essential allegations of the second complaint parallel[ed] those of the first" and "the sole material change in the later suit was the addition of certain defendants, some of whom had been named in the original complaint as participating in the conspiracy but had not been named as parties defendant at that time." *Id.* at 842. Other courts have followed *Gambocz* in emphasizing the unfairness of the plaintiff's successive lawsuit when finding coconspirators in privity. *See, e.g.*, *Chavers v. Hall*, 2011 WL 2457943, at *7 (S.D. Tex. June 16, 2011), *aff'd*, 488 F. App'x 874 (5th Cir. 2012) ("Plaintiffs had ample information to sue them in the first action, but failed timely to do so."); *Cahill v. Arthur Andersen & Co.*, 659 F. Supp. 1115, 1122–23 (S.D.N.Y. 1986), *aff'd*, 822 F.2d 14 (2d Cir. 1987) (noting that the plaintiff "had chosen the forum in which the claim was litigated and the party or parties from whom relief had been sought" and

Case 3:13-cv-00335 Document 36 Filed in TXSD on 10/08/14 Page 16 of 19

"had had a prior opportunity to raise all claims relating to the disputed transaction" and that "[a]ll of the facts that are the basis of this suit were known to plaintiff at the time of the earlier action, including Andersen's alleged role in the so-called conspiracy"); *McLaughlin v. Bradlee*, 599 F. Supp. 839, 848 (D.D.C. 1984), *aff'd*, 803 F.2d 1197 (D.C. Cir. 1986) (finding privity where "most of the instant defendants were also defendants in at least one of the earlier suits," "there is only one alleged conspiracy," and there were no "mitigating circumstances in favor of the plaintiff"). The discussion in these cases demonstrates that the courts were not applying a *per se* rule that coconspirators are always in privity, but assessing whether the circumstances justified such a finding. *Cf. Getty Oil*, 845 S.W.2d at 800 (holding that "the circumstances of each case must be examined" in making privity determinations for claim preclusion).

The circumstances do not justify applying nonmutual claim preclusion in this case. Most importantly, unlike all of the cases cited above applying that doctrine in a coconspirator situation, this is not the second time that NYPI has filed a lawsuit alleging similar claims. Although NYPI previously litigated issues that bear a strong resemblance to its current claims, it did so as counterclaims to a suit brought by Hembree for breach of contract. It did not choose the forum of the earlier lawsuit. *Compare Cahill*, 659 F. Supp. at 1122–23 (noting the plaintiff's choice of forum in the prior suit as a factor in finding privity). Nor did it choose

the time that the suit was brought; it is therefore not NYPI's fault that the factual allegations discovered after that suit's dismissal were not investigated in time to raise them in state court. *Compare Chavers*, 2011 WL 2457943 at *7 (noting the plaintiff's knowledge of the circumstances at the time of the prior action as a factor in finding privity).

Although the Defendants focus on the similarity of NYPI's current claims to its counterclaims in the state court suit, it does not establish that those claims could have been litigated against the non-Hembree defendants in the prior case. Texas rules of pleading allow a defendant to bring in a third party "who is or may be liable to him or to the plaintiff for all or part of *the plaintiff's claim against him*." Tex. R. Civ. P. 38(a) (emphasis added); *see also Goose Creek Consol. Indep. Sch. Dist. of Chambers & Harris Counties, Texas v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 492 (Tex. App.—Texarkana 2002, pet. denied) ("A third-party action is not an independent cause of action, but is derivative of the plaintiff's claim against the responsible third party."); *Ruthart v. First State Bank, Tulia, Tex.*, 431 S.W.2d 366, 368 (Tex. Civ. App.—Amarillo 1968, writ ref'd) (in a suit to recover on a promissory note, denying defendant's attempt to implead officers who made financial arrangements with the lending bank and whose company received the proceeds). NYPI has never asserted that the non-Hembree defendants were liable for Hembree's state court breach-of-contract claim against NYPI for not paying the

agreed upon settlement amount.[7]

It does not implicate the concerns of claim preclusion—protecting litigants from duplicative claims and promoting judicial economy—to allow NYPI to pursue claims in this suit against the non-Hembree defendants that it may not have been able to bring into the suit as third parties.[8] *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979) (noting that *res judicata*, like collateral estoppel, is meant both to protect litigants from duplicative claims and to promote judicial economy). The unusual procedural history leads to the conclusion that the prior case in which NYPI was a defendant and counterclaimant does not preclude its claims against the non-Hembree defendants who were not party to the earlier suit.[9]

---

[7] To the extent that a conspiracy allegation establishes a relationship of vicarious liability, the Restatement suggests that alleged coconspirators may assert claim preclusion against plaintiffs in a second action. RESTATEMENT (SECOND) OF JUDGMENTS § 51(1). But the Restatement also provides two exceptions to that rule. First, when "[t]he claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action," claim preclusion is not available. *Id.* § 51(1)(a). Here, NYPI could not have asserted claims that it discovered after the dismissal of the state court action, and may not have been able to assert any claims against the non-Hembree defendants given the procedural posture of the state case. The second exception applies when "[t]he judgment in the first action was based on a defense that was personal to the defendant in the first action," which is also the case here. *Id.* § 51(1)(b).

[8] Even if the state court could have allowed NYPI to bring counterclaims against the non-Hembree defendants, it was not unreasonable for NYPI to decline to assert those counterclaims. Doing so would have greatly expanded the nature of that case, which was focused on a contract dispute between NYPI and Hembree.

[9] Because the Court denies the Defendants' motion to dismiss the non-Hembree defendants on claim preclusion grounds, it is not necessary to consider NYPI's argument that certain exhibits put forward by the Defendants are hearsay.

## V. CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment (Docket Entry No. 15) is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** the motion with respect to the claims against Hembree. The Court **DENIES** the motion with respect to the claims against the non-Hembree defendants.

SIGNED this 8th day of October, 2014.

_____
Gregg Costa
United States Circuit Judge[*]

---

[*] Sitting by designation.