UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| NEW YORK PIZZERIA, INC., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 3:13-CV-335 |
| § | |
| RAVINDER SYAL, *et al*, § | |
| § | |
| Defendants. § | |

## **MEMORANDUM AND ORDER**

Intellectual property plays a prominent and growing role in our Information Age economy. High-stakes litigation over software patents, for example, is increasingly common in federal dockets. In this case, though, the plaintiff seeks intellectual property protection for something quite traditional: the meal one might order at a neighborhood pizzeria. New York Pizzeria, Inc. contends that the flavor of its Italian food and the way in which it plates its baked ziti and chicken and eggplant parmesan dishes are entitled to protection under the trademark laws. These are some of the key issues to be resolved in the pending Rule 12(b)(6) motion that seeks dismissal of four claims in full and one in part.

### I.  BACKGROUND

New York Pizzeria, Inc. (NYPI) is a franchisor of restaurants founded and solely owned by Gerardo Anthony Russo. Adrian Hembree, a former vice

president of NYPI and former owner of an NYPI-franchised restaurant, was terminated in March 2011.  After a state court lawsuit brought by Hembree alleging that NYPI breached his termination agreement, NYPI brought this suit against Hembree and alleged coconspirators contending they engaged in a scheme to create a knockoff restaurant chain called Gina's Italian Kitchen using NYPI's recipes, suppliers, and internal documents and manuals.  According to NYPI, Hembree "began disclosing NYPI's proprietary information to Ravinder Syal," a restaurateur and alleged coconspirator, "sometime in 2010," while Hembree still worked for NYPI.  Docket Entry No. 20 ¶ 39.  It is further alleged that after Hembree left NYPI, some of the defendants obtained the username and password of an existing NYPI franchisee, and used it to log on to NYPI's FranConnect account, a service that allows franchisors to communicate with franchisees.  NYPI alleges that Syal, or someone acting on his behalf or on behalf of one of his businesses, downloaded NYPI's trade secrets, including recipes, from that account.  Syal also hired former NYPI employees to work at Gina's locations, who are claimed to have violated their confidentiality obligations by disclosing NYPI's trade secrets.

      The extent of the alleged misappropriation and infringement came to light when NYPI's "internal auditor" (who apparently obtained a job at a Gina's

restaurant in order to investigate the violations, *see* Docket Entry No. 1 ¶ 45 (original complaint)) observed Defendants using NYPI's recipes and copying its supply orders, and taped conversations with Gina's employees who admitted to the use of NYPI's recipes and manuals.  Docket Entry No. 20 ¶¶ 53–58.

NYPI's amended complaint (Docket Entry No. 20) asserts fifteen counts against various defendants.  In a previous order, this court dismissed Adrian Hembree from the suit because of a liability waiver he signed as part of his termination from NYPI (Docket Entry No. 36).  Five of the counts are at issue in the remaining Defendants' current motion to dismiss (Docket Entry No. 24):

- **Count 1:** Violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(a)(2)(C), for improperly accessing a computer system to obtain NYPI's proprietary information;

- **Count 2:** Violation of the Stored Communications Act, 18 U.S.C. § 2701, for improperly accessing a computer system to obtain NYPI's proprietary information;

- **Count 3:** Trademark infringement under the Lanham Act for copying NYPI's distinctive flavors;

- **Count 4:** Trade dress infringement under the Lanham Act for copying NYPI's distinctive plating methods; and

- **Count 14:** Aiding and abetting the commission of various torts.

## II.  ANALYSIS

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A claim is considered "plausible" if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, a claim is not considered plausible where it is based on nothing more than "formulaic recitation of the elements of a cause of action" or it merely consists of "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). In considering a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *In re Katrina*, 495 F.3d at 205.

The Court takes up each contested count in turn.

### A.    Count 1: Computer Fraud and Abuse Act

To state a civil CFAA claim, a plaintiff must allege that one of the first five factors listed in 18 U.S.C. § 1030(c)(4)(A)(i) is present.  *See* 18 U.S.C. § 1030(g). Here, NYPI alleges the first factor, a "loss" during a one-year period of at least $5,000 in value.  *See* § 1030(c)(4)(A)(i)(I); Docket Entry No. 20 ¶ 69 ("NYPI spent in excess of $5,000 determining the source of the intrusion and extent of the damage.").  "Loss" is defined under the CFAA as

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11).

Defendants do not dispute that the cost to NYPI of "determining the source of the intrusion and extent of the damage" meets the $5,000 threshold and constitutes an actionable "loss" under the CFAA; they thus do not seek full dismissal of NYPI's CFAA claim.  Instead, they argue that the Court should eliminate NYPI's claim for additional compensatory damages resulting from the misappropriation of its trade secrets as a result of the computer intrusion.  Docket Entry No. 24 ¶ 3.  They assert that compensation for trade secrets misappropriated

through a computer intrusion is not contemplated by the CFAA, citing cases stating that such an injury does not constitute "damage" or "loss" under the statute.

Although a number of courts have taken this position, *see, e.g.*, *L-3 Comm'ns Westwood Corp. v. Robicharux*, 2007 WL 756528, at *4 (E.D. La. Mar. 8, 2007), others have held that lost trade secrets can constitute "damage." *See, e.g.*, *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1126–29 (W.D. Wash. 2000). And still others—including in a case cited in Defendants' motion—have held that even though misappropriation of trade secrets is not "damage" or "loss" under the CFAA, those defined terms are not limits on the amount of damages recoverable under the statute. Instead, a "loss" of $5,000 is only a threshold inquiry that once met opens up the door to a broader category of compensatory damages. *See Frees, Inc. v. McMillian*, 2007 WL 2264457, at *4–6 (W.D. La. Aug. 6, 2007). Defendants' motion to dismiss does not address the latter argument.

The Court declines to decide the scope of damages recoverable under the CFAA at this stage. Defendants' request to limit the scope of NYPI's claimed remedy is an unusual posture for a Rule 12(b)(6) motion, but one that seems to be increasingly common as defendants seek to eliminate claims for punitive damages or attorneys' fees at the pleading stage even when they do not seek dismissal of the

cause of action itself. *See, e.g.*, *W & T Offshore, Inc. v. Apache Corp.*, 918 F. Supp. 2d 601, 604 (S.D. Tex. 2013) (ruling on a motion to dismiss claims, among others, for attorneys' fees and exemplary damages). It is not clear to the Court that a Rule 12(b)(6) motion is the appropriate vehicle for limiting the scope of a remedy sought. It addresses a "failure to state a claim," which typically means an inability to meet one of the elements of a cause of action. The result of a successful motion is dismissal of the cause of action. To be sure, an injury or damages is an element of most claims, so a failure to allege any damages may warrant dismissal of a claim at the Rule 12 stage. *See, e.g.*, *Jameel v. Flagstar Bank, FSB*, 2012 WL 5384177, at *8–9 (S.D. Tex. Nov. 2, 2012) (dismissing a claim under the Truth in Lending Act without prejudice for failure to allege actual damages).

But the motion here does not challenge NYPI's ability at the pleading stage to satisfy the CFAA's damages element nor does it seek dismissal of the claim. It only seeks a ruling that NYPI may not obtain damages under the CFAA for any trade secret misappropriation that resulted from the alleged computer intrusion. For the reasons stated above, the Court has doubts that Rule 12(b)(6) affords this type of relief. *See W & T Offshore*, 918 F. Supp. 2d at 604 ("The motion to dismiss is . . . denied as to estoppel, attorney's fees, and exemplary damages

7 / 19

because they are remedies rather than separate claims for relief."); *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 353 (E.D.N.Y. 2007) ("[A] motion for failure to state a claim properly addresses the cause of action alleged, not the remedy sought."). On the other hand, the 12(b)(6) standard could be construed more broadly to apply to failures to state a claim for a particular type of damages. *See, e.g.*, *Doe I v. Holy See*, 2013 WL 1768494, at *4–5 (E.D. La. Apr. 24, 2013) (granting motion to dismiss punitive damages because Louisiana law only allows punitive damages when they are expressly authorized by statute). That view may also promote efficiency in certain cases by cabining discovery to damages that are legally available.

Those efficiency gains are absent from the motion to limit the scope of damages at the Rule 12 stage in this case, however. NYPI has asserted a state law claim for misappropriation of trade secrets that is unchallenged at the pleading stage. Discovery on misappropriation damages will thus proceed whether or not the CFAA allows them. It may prove unnecessary to ever decide the difficult question whether the CFAA allows misappropriation damages because either 1) NYPI may prevail on its state law misappropriation claim, or 2) NYPI may not be able to prove liability on the CFAA claim.

The Court therefore concludes that both its concern about the propriety of this request in the Rule 12(b)(6) context and the interest in not deciding what may end up being a moot issue warrant not deciding at this time the difficult question concerning the availability of misappropriation damages under the CFAA.

### B.    Count 2: Stored Communications Act

Defendants do seek full dismissal of NYPI's Stored Communications Act claim, challenging its specificity because the complaint "fails to identify the franchisee" whose username and password were used or that the unidentified franchisee's information was used unlawfully.  Docket Entry No. 24 ¶ 5–6.  The Court finds that NYPI has sufficiently pleaded its Stored Communications Act claim.  NYPI's amended complaint states that Syal, one of the businesses he is involved with, or someone acting on their behalf "obtained an existing franchisee's user name and password to FranConnect" without the franchisee's or NYPI's consent, and used that information to access the account and "download[] or otherwise cop[y] NYPI's proprietary information, including recipes."  Docket Entry No. 20 ¶ 73.  Taking the facts pleaded as true, the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  NYPI will have the chance to develop the details of its claim further through discovery.

### C. Counts 3 and 4: Lanham Act

NYPI argues that Defendants have infringed on its trademarks and trade dress, and brings two distinct claims under the Lanham Act, 15 U.S.C. § 1125(a). One is related to the flavor of its food; the other is related to the presentation, or "plating," of its dishes.

#### 1. Flavor

NYPI argues that its "specially sourced branded ingredients and innovative preparation and preservation techniques contribute to the distinctive flavor" of NYPI's products. Docket Entry No. 20 ¶ 76. By using those ingredients and processes, NYPI claims, Defendants "have infringed and/or diluted NYPI's protected trademark interest in the distinctive trademark flavor of its products." *Id.* ¶ 77.

The Lanham Act supplies a federal cause of action against any person who,

> in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A).

NYPI is correct that there is "no special legal rule" that prevents flavor from serving as a trademark. *Cf. Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 161 (1995). "It is the source-distinguishing ability of a mark—not its ontological status as color, shape, fragrance, word, or sign—that permits it to serve [trademark] purposes." *Id.* at 164. In principle, the Lanham Act encompasses "almost anything at all that is capable of carrying meaning." *Id.* at 162.

The Court does not doubt that flavor can "carry meaning," but that meaning entitles a mark to trademark protection only if it distinguishes the source of a product. *See Sunbeam Prods., Inc. v. W. Bend Co.*, 123 F.3d 246, 252 (5th Cir. 1997) ("[T]he essence of a protected mark is its capacity to distinguish a product and identify its source."). Some marks, typically words or designs created out of whole cloth that are considered "arbitrary" or "fanciful," are inherently distinctive. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000); *Qualitex*, 514 U.S. at 162–63 (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9–10 (2d Cir. 1976)). Rather than describing the product to which they are attached, inherently distinctive marks identify the source of that product. Colors, on the other hand, cannot be inherently distinctive, because consumers are not predisposed to assume they are indicators of a product's source. *See Wal-Mart Stores*, 529 U.S. at 211–13.

As with colors, it is unlikely that flavors can ever be inherently distinctive, because they do not "automatically" suggest a product's source. *See In re N.V. Organon*, 79 U.S.P.Q.2d 1639, at *15 (T.T.A.B. June 14, 2006) ("Because flavor is generally seen as a characteristic of the goods, rather than as a trademark, a flavor, just as in the cases of color and scent, can never be inherently distinctive."). It is therefore only when a flavor has acquired distinctiveness, or "secondary meaning"—that is, when customers have learned to associate the flavor with its source—that it has any chance of serving as a valid trademark. *See Wal-Mart Stores*, 529 U.S. at 211 ("[A] mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'").

But even then, there is another hurdle to achieving trade dress status: functional product features are not protectable. *Qualitex*, 514 U.S. at 165. A product feature is functional "'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article,' that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Id.* (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982)). To afford functional features protection under trademark law, which is focused on

"promot[ing] competition by protecting a firm's reputation," would intrude on other areas of intellectual property law that allow producers to prevent competitors from incorporating a "useful product feature."  *Id.* at 164–65.

The functionality doctrine is a significant hurdle for any party seeking to protect a flavor as a trademark.  In *In re N.V. Organon*, for example, the Trademark Trial and Appeal Board (TTAB) denied a pharmaceutical company a trademark in the orange flavor of its pills on functionality grounds.  79 U.S.P.Q.2d 1639, at *6–13.  Because medicine generally has "a disagreeable taste," flavoring "performs a utilitarian function that cannot be monopolized without hindering competition in the pharmaceutical trade."  *Id.* at *13.[1]

If the hurdle is high for trademarks when it comes to the flavor of medicine, it is far higher—and possibly insurmountable—in the case of food.  People eat, of course, to prevent hunger.  But the other main attribute of food is its flavor, especially restaurant food for which customers are paying a premium beyond what it would take to simply satisfy their basic hunger needs.  The flavor of food undoubtedly affects its quality, and is therefore a functional element of the product.  *See Qualitex*, 514 U.S. at 165.

---

[1] Contrast this with *In re Clarke*, 17 U.S.P.Q.2d 1238 (T.T.A.B. Sept. 19, 1990), in which the TTAB took up the question whether a floral fragrance used in sewing thread and embroidery yarn may be trademarked.  The Board held that a scent that serves no functional role and "is not an inherent attribute or natural characteristic" of the goods may be registered.  *Id.* at *2.

Not surprisingly given this functionality bar, NYPI is unable to cite any case recognizing a trademark in the flavor of food. NYPI does not allege that its supposedly unique flavoring is merely an identifier, and any such allegation would be implausible given that the flavor of pasta and pizza has a functional purpose. The trademark claim is therefore dismissed.

### 2. Plating

While the flavor infringement claim is plainly half-baked, NYPI's plating infringement claim deserves closer consideration. NYPI states that its

> plating methods present NYPI's products to customers in a distinctive visual manner. NYPI claims a protected trade dress interest in the distinctive visual presentation of the product to customers. Such trade dress includes, but is not limited to, the presentation of baked ziti, eggplant parmesan, and chicken parmesan.

Docket Entry No. 20 ¶ 80. Although NYPI cites ample authority demonstrating that "non-traditional" marks are entitled to protection, it cites no authority specifically addressing plating. *See* Docket Entry No. ¶ 35 22–24. This Court recognizes, however, that there may be some rare circumstances in which the plating of food can be given trade dress protection. When plating is either inherently distinctive or has acquired a secondary meaning, when it serves no functional purpose, and when there is a likelihood of consumer confusion, it may be possible to prove an infringement claim. It is conceivable that certain well-

known "signature dishes" could meet this very high standard. *See* Naomi Straus, Comment, *Trade Dress Protection for Cuisine: Monetizing Creativity in a Low-IP Industry*, 60 UCLA L. REV. 182, 218–47 (2012).

NYPI, however, cannot show any of this because it has not alleged which plating methods it has a protected trade dress interest in (it only states that its claim "includes, but is not limited to" its baked ziti, eggplant parmesan, and chicken parmesan dishes), what makes them distinctive and nonfunctional, and what infringes them.

Under the pleading standards laid out by the Supreme Court in *Twombly* and *Iqbal*, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In the trade dress context, a plaintiff must articulate the elements that comprise its protected trade dress in order for the court to evaluate the plausibility of its claim and so the defendant has fair notice of the grounds of the claim. *See Alpha Kappa Alpha Sorority Inc. v. Converse Inc.*, 175 F. App'x 672, 677–81 (5th Cir. 2006) (holding that a complaint in which the plaintiffs identified the elements comprising their claimed marks was sufficient to survive a motion to dismiss).

That notice is lacking here because Defendants have no idea what it is about

the plating of ziti and chicken or eggplant parmesan that is distinctive. *See Myung Ga, Inc. v. Myung Ga of MD, Inc.*, 2011 WL 3476828, at *5 (D. Md. Aug. 8, 2011) (dismissing trademark claim in which the plaintiff failed to allege "similarities between its trademark and Defendants' trade name, signage, and advertising," "any actual confusion," "*how* Defendants use the marks and how such use might create a similar impression to Plaintiff's mark," any "comparative qualities of the two marks," or "the sophistication of the consuming public" (emphasis in original)). Furthermore, "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663–64. Less detail in pleadings may be justified in certain circumstances, such as when certain facts might not be available to the plaintiff prior to discovery. *See, e.g.*, *U.S. ex rel. McDonough v. Symphony Diagnostic Servs., Inc.*, 2012 WL 628515, at *6 (S.D. Ohio Feb. 27, 2012) ("At the pleading stage, prior to discovery, the plaintiff cannot be expected to provide complete details of the necessary sensitive corporate statistics to support his allegations on issues of costs and pricing. It is sufficient that the [plaintiff] . . . provides some factual details which, at least on their face, support those allegations."). But that is not the case here. Unlike the details of which franchisee account was used in NYPI's Stored Communications Act claim, NYPI knows how

it plates its food, and it could have easily identified what is distinctive about the plating that might warrant trade dress protection. NYPI's claim for infringement of its trade dress is therefore dismissed.

### D. Count 14: Aiding and abetting

NYPI also asserts a claim for aiding and abetting against Robert Salcedo, Hembree's business partner in his former NYPI franchise. The complaint asserts that Salcedo "aided and abetted" a number of the other defendants in the commission of "one or more torts, including misappropriation of trade secrets, civil theft, unfair competition by misappropriation, and tortious interference with contract." Docket Entry No. 20 ¶ 123. It claims that "despite his knowledge of the prior lawsuit between Hembree and NYPI, and the prior business relationship between them," Salcedo "nonetheless continued to assist [a number of defendants] to continue using NYPI's Trade Secrets and Restaurant Franchise Product," and "to assist operating the Gina's business and accepting a share of the franchise royalties." *Id.*

Defendants contend this count fails because there is no cause of action under Texas law for aiding and abetting, unless the "party being sued aided and abetted another person's *breach of a fiduciary duty*." Docket Entry No. 24 ¶ 15 (emphasis in original). NYPI does not cite any cases establishing that Texas law

17 / 19

recognizes this cause of action, but rather argues that it is "an open question." Docket Entry No. 35 ¶ 31. While the Supreme Court of Texas has engaged in an analysis of "concert of action" liability under the Restatement (Second) of Torts § 876, *see, e.g.*, *Juhl v. Airington*, 936 S.W.2d 640, 643–44 (Tex. 1996); *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 69 (Tex. 1989), it has not actually applied that theory of liability. Furthermore, that court has stated that "[t]he purpose of the concert of action theory is to deter antisocial or dangerous behavior." *Juhl*, 936 S.W.2d at 644. Even if Texas courts are open to recognizing aiding and abetting liability, it is thus unlikely that they will extend it to claims for aiding and abetting the competition-related torts at issue here. *See W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 922 (Tex. App.—Dallas 2014, pet. filed) (declining to adopt a theory of liability for aiding and abetting the misappropriation of trade secrets). And in general, "[a] party who wants a court to adopt an innovative rule of state law should litigate in state rather than federal court. . . . Federal judges are disinclined to make departures in areas of law that we have no responsibility for developing." *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1231 n.12 (5th Cir. 1988) (alterations in original) (quoting *Afram Exp. Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir. 1985), *abrogated on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991)).

NYPI's aiding and abetting claim is dismissed.

### III. CONCLUSION

For the reasons explained above, Defendants' motion to dismiss (Docket Entry No. 24) is:

- **DENIED** with respect to NYPI's claim for damages under the Computer Fraud and Abuse Act resulting from the misappropriation of its trade secrets without prejudice to raising that issue later in the case if necessary (**Count 1**);

- **DENIED** with respect to NYPI's Stored Communications Act claim (**Count 2**);

- **GRANTED** with respect to NYPI's Lanham Act claim for infringement of its flavors (**Count 3**);

- **GRANTED** with respect to its Lanham Act claim for infringement of its plating methods (**Count 4**); and

- **GRANTED** with respect to NYPI's aiding and abetting claim (**Count 14**).

SIGNED this 20th day of October, 2014.

_____
Gregg Costa
United States Circuit Judge[*]

---

[*] Sitting by designation.