United States District Court
Southern District of Texas
**ENTERED**
April 05, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| NEW YORK PIZZERIA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-00335 |
| | § | |
| SYAL, ET. AL., *et al*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

# MEMORANDUM AND ORDER

This motion originates from a lawsuit filed by New York Pizzeria (NYPI) against Adrian Hembree, Gina's Licensing Company (GLC), and a number of other defendants. NYPI asserted a number of business torts based principally on the allegation that the defendants had stolen their recipes for pizza and other Italian dishes. This court granted Hembree's motion for summary judgment dismissing NYPI's claims against him because of a broad release in a settlement agreement the parties entered into to end a previous lawsuit. Docket Entry No. 36. Based on the same violation of that settlement agreement, the Court later granted summary judgment in favor of Hembree on his breach of contract counterclaim against NYPI. Docket Entry No. 95. This court also granted summary judgment on *res judicata* grounds in GLC's favor on all of NYPI's claims, including a claim under the Texas Theft Liability Act (TTLA). *See* Docket Entry No. 99.

Both GLC and Hembree, represented by the same counsel, now move for attorney's fees. Hembree cites both statutory and contractual grounds for recovering costs incurred in defending against NYPI's claims and pursuing his breach of contract counterclaim. GLC invokes the fee-shifting provision of the TTLA. They seek $218,114 in attorney's fees and $15,132 in costs and expenses.

## I.

Hembree seeks multiple avenues to recover attorney's fees: the Texas Uniform Declaratory Judgments Act (TUDJA), Chapter 38 of the Texas Civil Practice and Remedies Code, the attorney's fee provision of the TTLA, and the First Settlement Agreement he signed with NYPI. Even if one of these sources authorizes fees, we must address the applicability of each because that will determine whether Hembree is entitled to fees for work that helped Hembree defeat NYPI's claims, succeed on his counterclaim, or both. As will be discussed later, those various forms of relief were obtained at different times in the lawsuit. Likewise, even though Hembree and GLC had the same lawyers, it is also necessary to determine whether the TTLA provides a source for recovering fees for work done on GLC's behalf. This parsing is necessary because "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006).

A.  **Texas Uniform Declaratory Judgment Act**

The TUDJA allows courts to award attorney's fees "as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. But the Fifth Circuit has previously held that district courts may not award attorney's fees under the TUDJA in diversity cases, because the statute sets forth procedural, rather than substantive, law. *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) (citing *Housing Authority v. Valdez*, 841 S.W.2d 860, 865 (Tex. App.—Corpus Christi 1992, writ denied) (holding that the TUDJA is "a procedural mechanism for resolving substantive controversies" and does not create substantive rights)). Because this Court applies federal, not state, procedural law to a diversity suit, the TUDJA is not a source for recovering fees. *Utica*, 138 F.3d at 210; *see also Camacho v. Texas Workforce Comm'n*, 445 F.3d 407 (5th Cir. 2006).

B.  **Chapter 38**

Hembree's fee request also relies on Chapter 38 of the Texas Civil Practice & Remedies Code, which allows for attorney's fees in a successful breach of contract action. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8). Because the availability of attorney's fees is a substantive issue of state law, this Court applies Texas law in determining the availability of fees under Chapter 38. To recover attorney's fees under Chapter 38, a party must "(1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Intern.,*

*Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Though Hembree succeeded in showing NYPI's breach of contract, he has not been awarded any damages (he chose to forego a bench trial that was scheduled to determine damages, *see* Docket Entry No. 112). Texas law, therefore, does not allow this Court to award attorney's fees under Chapter 38. Hembree's assertion that he is "entitled to nominal damages" does not change the analysis, as Hembree has neither sought nor obtained nominal damages. *See* Docket Entry No. 17 at 8–10.

C.   **First Settlement Agreement**

Hembree presses on and asserts that the First Settlement Agreement that he entered into with NYPI gives him an alternative path to fees. Parties can contract for a fee-recovery standard that goes beyond recovery under a state statute. *See Intercontinental Grp. P'ship v. KB Home Lone Star*, 295 S.W.3d 650, 653 (Tex. 2009). Section 11 of that settlement agreement states that:

> In the event of any breach of this Agreement, and in addition to the terms of this agreement and any other legal or equitable remedies, the prevailing party shall be entitled to recover the reasonable costs and attorney's fees incurred in seeking relief for any such alleged breach.

Docket Entry No. 39 Ex. A at 9. This Court has already ruled that NYPI breached the terms of this agreement when it filed this suit. Docket Entry No. 36 at 5–7.

But it is not a given that Hembree is a prevailing party under the agreement. The agreement does not define "prevailing party," so Texas law provides the

default definition. *KB Home*, 295 S.W.3d 650. *KB Home* held that a plaintiff must obtain an actual remedy that "materially alter[s] the legal relationship" between the parties to be considered a prevailing party. *KB Home*, 295 S.W.3d at 655–57. The court held that a legal victory on liability, with no actual relief granted, would not suffice. *Id.* at 655. That leaves Hembree with the same problem he faced in seeking attorney's fees under Chapter 38: Hembree has not actually obtained any remedy for his counterclaim; he has shown that NYPI breached the contract but he has not recovered damages. Under Texas law, Hembree is not a prevailing party as to his counterclaim for breach of contract.

Fortunately for Hembree, though, he is also a defendant in this action. Not only did the First Settlement Agreement serve as the basis for Hembree's counterclaim for breach of contract, it also served as his defense against the claims NYPI levelled against him. *See* Docket Entry No. 36 at 5–7. *KB Home* addressed Texas's definition of "prevailing party" for plaintiffs, but it did not speak to when a defendant is a "prevailing party." That came later, in *Epps v. Fowler*, 351 S.W.3d 862 (Tex. 2011). *Epps* held that a defendant is a prevailing party when it obtains a dismissal with prejudice, because the res judicata effect of that dismissal "works a permanent, inalterable change in the parties' legal relationship to the defendant's benefit." *Id.* at 868–69. Hembree achieved exactly that when this court granted its summary judgment motion dismissing NYPI's claims against him. Docket Entry

36 at 5–7.  Because dismissal of the charges against him was the relief he sought in defending against NYPI's charges, the First Settlement Agreement allows Hembree to recover attorney's fees incurred for his defense.  This covers fees up to the time of the dismissal of NYPI's claims against him, which issued on October 8, 2014.  Docket Entry No. 36.

**D.    GLC Texas Theft Liability Act**

GLC seeks attorney's fees under the TTLA.[*]  The Act requires that courts award attorney's fees to the prevailing party in a suit under the Act.  TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(b).  NYPI asserts that GLC is nonetheless barred from receiving these fees, because GLC did not seek those fees in its answer.  It is true that under Texas procedural law, a party must specifically plead for attorney's fees in its answer to a claim under the TTLA.  *See Shaw v. Lemon*, 427 S.W.3d 536, 540 (Tex. App.—Dallas 2014, writ denied).  But although this court applies Texas law in determining the availability of attorney's fees, it applies federal law in determining whether a party sufficiently pleaded for those fees.  This is because pleading standards "are procedural and are governed by federal law." *Playboy Enters., Inc., v. Sanchez-Campuzano*, 561 Fed. App'x. 306, 309 (5th Cir. 2013) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).

---

[*] Hembree also seeks fees under the TTLA.  Although NYPI did assert TTLA claims against Hembree in its original complaint, those claims were dropped in NYPI's Amended Complaint.  There were no TTLA claims to defend against after NYPI filed its Amended Complaint, and Hembree does not identify specific fee entries that were incurred in defending against the TTLA claim between the Original and the Amended Complaint.

Federal law does not have the same pleading requirement.  In *Engel v. Teleprompter Corp.*, a Fifth Circuit panel awarded attorney's fees to a prevailing defendant who had not pleaded for them, but instead sought them before a judgment was entered after the prevailing defendant had been successful on appeal. 732 F.2d 1238, 1240–41 (5th Cir. 1984).  The panel noted that "[w]here a statute or contractual provision authorizes a fee award, such an award becomes the rule rather than the exception, and should be awarded routinely as are costs of suit." *Id.* at 1241.  This rule was followed in *Engel* even when the prevailing defendant had not sought fees until after the litigation was all but concluded (the legal issue had been decided, but a judgment had not issued).  The panel in *Engel* also noted that neither party disputed that fees were available to the prevailing party under the contract.  *Id.*  NYPI does not assert that the TTLA does not allow for a prevailing defendant to recover attorney's fees.  In fact, the TTLA states that a prevailing party "shall" recover reasonable costs and attorney's fees.  TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(b).  Applying the rule in *Engel* here, GLC can recover attorney's fees even though it did not seek them in its answer.

The holding in *United Indus. Inc. v. Simon-Hartley, Ltd.* does not change that result.  91 F.3d 762, 765 (5th Cir. 1996).  In *United Industries*, a Fifth Circuit panel upheld a district court's denial of attorney's fees when a prevailing defendant waited almost a year after the judgment had been entered to request attorney's fees.

*Id.* at 764.  Although the panel noted that as a general rule a party is required to put its opponent on notice that it will seek attorney's fees, it distinguished its facts from *Engel*, which it did not overrule.  *Id.* at 765 n.2  In *Engel*, the availability of fees as a substantive matter was never at issue and the prevailing defendant sought fees before the court entered its judgment.  Similarly, GLC sought attorney's fees before this Court entered judgment, and NYPI does not challenge GLC's entitlement to attorney's fees aside from its pleading argument.  Moreover it is hard to see how NYPI was surprised by the fee request as it sought attorneys' fees when it alleged the TTLA claim.  Docket Entry No. 20 ¶ 105.  The Court thus finds that GLC may seek attorney's fees for costs associated with defeating the TTLA claim.

So what does this all mean?  It means that Hembree can seek attorney's fees for costs incurred up to the point when NYPI's claims against him were dismissed, but he cannot seek fees related to his counterclaim for breach of contract.  And GLC can seek fees for its defense pursuant to the TTLA claim, up to the time when the TTLA claims against it were dismissed.

## II.

Parsing out the fees that were expended towards recoverable claims is not so simple, though, because attorneys do not typically bill their time by claim, for obvious reasons.  And work related to one claim frequently relates to another.  For

example, work done to defend GLC against NYPI's misappropriation of trade secrets claim may also be useful in defending GLC against the TTLA claim. In recognition of this, Texas law states that work on recoverable and unrecoverable claims may be so "intertwined" that they are not subject to the general segregation rule. *Tony Gullo Motors*, 212 S.W.3d at 314. "[O]nly when discrete legal services advance both a recoverable and unrecoverable claim" are they so intertwined as to not be subject to segregation. *Id.* at 313–14. Having reviewed the work completed in this case and the fee entries submitted, the Court concludes that most of the work completed in GLC's defense cannot be segregated and thus will estimate the percentage of the fees that would have been incurred if the case just involved the recoverable claims. *Id.* at 314 & n. 83 (approving this approach); *see also Chaparral Texas, L.P. v. W. Dale Morris, Inc.*, 2009 WL 455282, at *8 (S.D. Tex. Feb. 23, 2009), *amended*, 2009 WL 1810125 (June 23, 2009) ("Federal courts applying *Chapa* have used a percentage formula to reduce fees when the prevailing party did not adequately segregate time spent on successful and unsuccessful claims."). The Court can, however, segregate work related to Hembree's unrecoverable counterclaim for breach of contract, so it will eliminate those fees before allocating a percentage to account for the inextricably intertwined issue.

## A.   Apportionment of Fees

To determine the amount of fees to award Hembree and GLC, the Court divides the action up into two Phases: Phase 1 when both Hembree and GLC were defendants in the action—and when both were eligible to recover fees— and Phase 2 when only GLC was a defendant (Hembree was just pursing his counterclaim during Phase 2).[†] The phase system is useful here because the fees record provided by counsel frequently does not differentiate between work done for GLC's claims and defenses versus Hembree's (and that's not surprising because most of the allegations and claims relate to both). Reductions broken into phases allows for a more precise estimation of the amount of work that would have been performed if the unrecoverable claims were not included. *See Eagle Suspensions, Inc. v. Hellman Worldwide Logistics, Inc.*, 2015 WL 252443, at *3–*4 (N.D. Tex. Jan. 20, 2015); *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, 2016 WL 3549483 (S.D. Tex. Jun. 30, 2016).

In Phase 1, most of the entries listed by GLC and Hembree's counsel relate directly to defending against NYPI's claims. Some, though, involve fees incurred to prepare Hembree's counterclaims against NYPI. Fees related to Hembree's counterclaims are not recoverable, so the Court reduces the award in Phase 1 by 8%, which accurately reflects the amount of listed entries concerning recoverable

---

[†] The numbers in this section reflect the aggregate of the fee entries provided by counsel to GLC and Hembree in their Motion for fees. *See* Docket Entry No. 105 Ex. C-1 & C-2; Docket Entry No. 116 Ex. C-4.

work.  Phase 2 contains significantly more entries involving Hembree's counterclaims (including preparation for the damages trial that Hembree later dismissed).  The Court therefore reduces the award in Phase 2 by 30%.

After this initial reduction to parse out the unrecoverable work pursuing Hembree's counterclaim, the Court must also consider how much reduction is required to account for fees incurred to defend against claims that are not recoverable, that is, fees incurred by GLC that do not relate to the TTLA claim. Although the TTLA is only one of the many claims NYPI brought,[‡] much of the work done to defend against other claims would need to be done if the TTLA claim was the only one brought against GLC. NYPI's theory of liability for most of its claims against GLC was that GLC stole, used, or otherwise misappropriated NYPI's property.  Most of the discovery would be needed just to defend against a TTLA theft claim (some, such as discovery related to eligibility for trade secret status, would not be needed).  And because GLC's *res judicata* argument ultimately defeated all of NYPI's claims against it—including the TTLA claim— the time spent researching and drafting that legal issue would have been the same even if the TTLA claim was the only one it had to defend against.  Based on the Court's familiarity with the litigation, review of the billing records, and the work

---

[‡] NYPI pressed claims against GLC for: violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C); violation of the Stored Wire and Electronic Communications and Transactional record Access Act, 18 U.S.C. § 2701; trademark infringement under The Lanham Act, 15 U.S.C. §1125; trade dress infringement under The Lanham Act; violation of the TTLA; unfair competition by misappropriation; tortious interference with existing contracts, and; conspiracy. *See* Docket Entry No. 20 at 23–46.

completed and filed, it concludes that a reduction of 25% for both Phases is an accurate reflection of the recoverable work, that is, the work that would have been incurred just defending a TTLA lawsuit. This 25% reduction is from the amount after the initial reduction for the expressed unrecoverable fees. After this reduction, there are $49,059 in recoverable fees for Phase 1 and $88,687 in recoverable fees for Phase 2, for a total of $137,746.

**B.     Reasonableness of Attorney's Fees**

The Court now reviews the reasonableness of the award, which can be adjusted up or down if relevant factors show such an adjustment is necessary to reach a reasonable fee. *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). In this calculus, the Court considers the following eight factors:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) The likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and length of the professional relationships with the client;
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

>(8) Whether the fee is fixed or continent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.*; *Bennigan's Franchising Co. v. Team Irish, Inc.*, 2011 WL 5921540 (N.D. Tex. 2011) (applying these factors to contractual award of fees). Evidence of each factor is not necessary. Although the Court has considered each factor, it will only address a few that are particularly probative. *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex. App.—Dallas 2008, no pet.).

Requested fees must bear a reasonable relationship to the amount in controversy or to the complexity of the case. *Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau*, 258 F.3d 345, 354 (5th Cir. 2001). For both Hembree and GLC, the stakes of the litigation were high. Hembree was required, yet again, to beat back claims that were the subject of at least one prior settlement agreement. Although NYPI asserts, in its papers and at hearings before this Court, that parts of the legal work contributed by Hembree and GLC's counsel was below the pay-grade of the lawyers who completed it, it is not unreasonable for parties to seek out sophisticated counsel when faced with accusations as serious as the ones at issue in this case. In its review of the entries provided, the Court does not find that the amount of work completed was unreasonable.

But there is a problem with the rates sought. Attorney's fees are to be calculated at the "prevailing market rates in the relevant community." *Blum v.*

*Stenson*, 465 U.S. 886, 895 (1984). The relevant community is the judicial district in which the litigation occurred, the Southern District of Texas. *Bear Ranch,* 2016 WL 3549483, at *5. To establish the reasonableness of the requested rate, the burden is on the fee applicant to produce evidence that the rates are in line with those "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The Court may also exercise its own expertise and judgment in evaluating the reasonableness of the rate. *Carroll v. Sanderson Farms, Inc.*, 2014 WL 549380, at *7 (S.D. Tex. 2014) (citing *Davis v. Bd. of Sch. Comm'rs of Mobil Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976).

Hembree and GLC's counsel, however, has not provided evidence on the reasonable rate in the Houston market. Instead, he asks the Court to take judicial notice that the rates are "consistent with the rates charge by other large law firms handling similar matters." Docket Entry No. 118 at 10. But the Court's review of similar business disputes in the Southern District reveals that the fees charged by Hembree and GLC's counsel are above market even for commercial litigators. *See, e.g., Bear Ranch*, 2016 WL 3549483, at *5 (examining rates for attorneys at large law firms in the Houston market).§ Keeping in mind the sophistication of the

---

§ In *Heartbrand*, "tens of millions of dollars were potentially in controversy based on expert testimony and the jury's advisory award exceeded $20 million." *Heartbrand*, 2016 WL 3549483, at *4. Yet the lead counsel seeking fees in that case, a lawyer from another prominent Houston firm, charged slightly less than lead counsel is seeking here  *See* Docket Entry 105 Ex. B at 2.

claims, but also the relatively high rates charged, the Court will reduce the fee award by an additional 10%. With this reduction, the Court ultimately awards GLC and Hembree $123,973 in fees.[**]

The calculation used to reach this final number is displayed in the chart below:

| Phase 1<br>Initial Fee Entry: $71,100 | Phase 2<br>Initial Fee Entry: $168,927 |
|---|---|
| First Reduction (8%): $65,412 | First Reduction (30%): $118,249 |
| Second Reduction (25%): $49,059 | Second Reduction (25%): $88,687 |
| Rate Reduction (10%): $44,154 | Rate Reduction (10%): $79,819 |
| Total Fee Award: $123,973 ||

The Court also awards $15,132 in costs. FED. R. CIV. P. 54(d)(1). These amounts will be included in the final judgment.

---

[**] Although Hembree and GLC's attorneys may have occasionally blockbilled, there is sufficient detail to determine whether the hours were reasonably expended. *Compare OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 2015 WL 5021954, at *8 (S.D. Tex. 2015) ("The court is unconcerned with the block billing, given the level of detail on the bills."), *with La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995) ("[Billing] records contain vague entries such as 'revise memorandum,' 'review pleadings,' 'review documents,' and 'correspondence.'"). The Court has also considered the other reductions suggested by NYPI and finds them either unpersuasive or already reflected in the reduction. *See* Docket Entry No. 117.

For the reasons explained above, Defendants' amended motion for attorney's fees (Docket Entry No. 105) is **GRANTED IN PART** and **DENIED IN PART.**

**SIGNED** this 5th day of April, 2017

>  /s/ Gregg Costa
> Gregg Costa
> United States Circuit Judge[††]

---

[††] Sitting by designation